**PENINSULA CORRECTIONAL
HEALTH CARE,**
Appellant,

v.

**DEPARTMENT OF CORRECTIONS,**
Appellee.

No. S–6810.

Supreme Court of Alaska.

Sept. 13, 1996.

Joe Ray Skrha, Kenai, Walter Share, Seattle, WA, for Appellant.

Timothy W. Terrell, Assistant Attorney General, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

PER CURIAM.

The decision of the superior court is AFFIRMED for the reasons expressed in its

Memorandum Decision and Judgment, attached hereto as an Appendix.

## APPENDIX

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

### THIRD JUDICIAL DISTRICT AT KENAI

Peninsula Correctional Health Care, Appellant,

vs.

Department of Corrections, Appellee.

Case No. 3KN–93–559–CI.

### *MEMORANDUM DECISION AND JUDGMENT*

Appellant, Peninsula Correctional Health Care (hereinafter PCHC) files this administrative appeal challenging the award of a nursing services contract at Wildwood Correctional Center and Wildwood Pretrial Facility (hereinafter Wildwood) to a competing bidder, Intercorp.

After taking a tumultuous course through the bidding, evaluation, re-evaluation and protest processes, PCHC filed a protest appeal to the Commissioner of the Department of Administration (hereinafter DOA), Nancy Usera.[1] DOA Commissioner Usera referred this matter to a hearing officer, Keith Gilmore. A hearing was conducted January 28, 1992. After additional briefing Hearing Officer Gilmore issued a recommendation that the award of the contract to Intercorp be upheld. Commissioner Usera adopted Hearing Officer Gilmore's recommendation as her final decision. It is from this decision that PCHC prosecutes this appeal.

### *STANDARD OF REVIEW.*

■ Agency determinations of fact are reviewable under the "substantial evidence" test. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963). The court need only determine whether such evidence exists, and does not choose between competing inferences. *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974). The court does not evaluate the strength of the evidence, but merely notes its presence. *Matanuska–Susitna Borough v. Hammond,* 726 P.2d 166, 179 n. 26 (Alaska 1986).

■ Legal determinations made by agencies are reviewed under the "reasonable basis" test for questions of law involving agency expertise, and the "substitution of judgment" standard for review of legal issues not involving agency expertise. *Jager v. State,* 537 P.2d 1100, 1101 n. 23 (Alaska 1975); *Kelly v. Zamarello,* 486 P.2d 906, 916–17 (Alaska 1971).

### *WAS INTERCORP'S BID RESPONSIVE?*

The bids received were in response to a request for proposal (hereinafter RFP) issued by the Department of Corrections (hereinafter DOC). PCHC asserts that Intercorp's bid was nonresponsive to DOC's RFP because it did not attach résumés and letters of commitment from the actual staff that Intercorp proposed to service the contract. Hearing Officer Gilmore rejected this claim finding, *inter alia:*

the RFP requires that letters of commitment and résumés for all known contract staff must be included with the offeror's proposal. There is no dispute that Intercorp's proposal contained no letters of commitment. § 3.4.2.4 of the RFP requires two things: 1. Letters of commitment for all *known* contract staff must be included with the offeror's proposal. 2. Résumés for all *known* contract staff must be included with the offeror's proposal. It is not a requirement that the RFP have a letter of commitment under any circumstances. If there are no known contract

---

1. The Department of Administration was not named as a party in this administrative appeal. However, both parties have conducted themselves as if the Department of Administration was, in fact, a party. This appeal cannot be decided without the inclusion of the Department of Administration as a party since it is that Department's decision that is being appealed. Under the circumstances, and because briefing is complete, the court elects to treat the Department of Administration as a party to this appeal.

staff committed to work at these facilities a proposer cannot be considered non-responsive because they do not include letters of commitment. The RFP does not require a letter of commitment from nurses the offeror intends to hire. The RFP does not require a letter of commitment from nurses the offeror knows will work under the contract. [Emphasis in original.]

The RFP detailed requirements for nursing staff at Wildwood and what the bid should contain in response to those requirements. Paragraph 3 of the DOC proposal provides, *inter alia:*

3.4.1. **Content:** All proposals must include the following sections in the order listed below....

. . .

3.4.2.4. **Job Descriptions and Résumés:** Letters of commitment and résumés for all known contract staff must be included with the offeror's proposal. Letters of commitment and résumés from any proposed subcontractors must also be included. For evaluation purposes, all résumés and letters of commitment should be current.

. . .

3.4.2.7. **Plan for Service Provision:** This portion must include the offeror's plan for providing services delineated in the Statement of Work portion of this RFP. Offeror's must include a proposed staffing schedule which includes the names and skill level of all proposed contract staff and any proposed sub-contractors for each duty position. If any duty position is not filled at the time of proposal submission the offeror must include a plan for obtaining personnel to fill any vacant positions to include a time-line for finalization of proposed contract staff.

Intercorp submitted its bid on the contract on June 11, 1991. With respect to nursing staff Intercorp's bid stated:

*Health Care Personnel Résumés:* All DOC contract personnel résumés of those who will be occupying positions at the Wildwood Correctional Center and the Pretrial Facility are currently on file with the Department of Corrections.

It is our intention to give consideration to those who are presently staffing the facility. After a short period of evaluation it may be necessary to replace those who do not meet company standards with other Intercorp DOC qualified staff.

Similarly, Intercorp's plan for services section of its bid stated:

3. **STAFF REQUIREMENTS:**

A. We would consider maintaining the existing professional staff providing that they meet our standards.

B. Back-up staff are available to support all positions under normal relief circumstances.

Résumés and qualifications of DOC-qualified nurses who work for Intercorp at other locations were attached.

PCHC asserts that Intercorp's proposal was non-responsive because Intercorp failed to submit résumés and letters of commitment from the staff it proposed to use. Worse still, according to PCHC, Intercorp knew at the time it submitted the bid that PCHC's current employees would not commit to work for Intercorp in advance and Intercorp submitted résumés from six registered nurses on its staff elsewhere in the State who had not agreed to work at Wildwood.

During the bidding and review process then DOC Commissioner Lloyd Haymes delegated authority to Statewide Program Director Richard Benson to act as DOC's procurement officer for the contract. Procurement Officer Benson addressed PCHC's concerns when it denied its protest on October 15, 1991.

The Intercorp proposal states (page 6) that it is their intention to "give consideration to those who are necessary to replace those who do not meet company standards with other Intercorp DOC qualified staff." Again, on page 13, Intercorp states "we would consider maintaining the existing professional staff providing that they meet our standard. Back-up staff are available to support all positions under normal relief circumstances."

It does not appear to me that Intercorp misrepresented their intention to offer positions to current contract staff nurses,

should they wish to continue providing services to the Department of Corrections at Wildwood Correctional Center. It also appears that PEC [Proposal Evaluation Committee] members were aware of Intercorp's intention to offer these contract positions to members of the current contract staff.

In reality, as you are aware, changes in Contractors does not always constitute a complete change in contract staff. Because of the shortage of qualified medical personnel within the State, many contract staff members elect to continue providing services under a new employer, rather than relinquish a job and attempt to secure alternative employment. The Department's position is that this is in the best interest of the State to allow this transition because it provides continuity of services and facilitates the transition of Contractors. As such, the RFP does not mandate that all contract nurses *must* be specified and that these individuals will be required to provide services over the life of the contract. Such requirements would be unduly restrictive. [Emphasis in original.]

■ This interpretation is consistent with the language found in § 3.4.2.7 of the RFP requiring the offeror to include a plan for obtaining personnel to fill vacant positions and supply a time-line.

Section 3.4.2.4 of the RFP requires letter of commitment and résumés for "all known contract staff." DOC and DOA have interpreted this provision to include individuals a bidder already has a contract with, not people they intend to contract with in the future. The chairman of the Proposal Evaluation Committee, Mike Taylor, testified that the RFP had been deliberately worded in this fashion so that existing staff at correctional facilities could transition from one contractor to another if desired. Clearly it would be unreasonable, as PCHC seems to suggest, to require that a prospective contractor obtain letters of commitment from workers, who at the time, are performing the same service for a competitive bidder.

Under these circumstances Commissioner Usera's decision that Intercorp's bid was responsive had a reasonable basis in fact and law.

## WAS INTERCORP'S BID BASED ON MISREPRESENTATION AND/OR FRAUD?

Alternatively, PCHC argues that Intercorp's contract award must be overturned since Intercorp's proposal for Wildwood was based on misrepresentation, material admissions and fraud. Specifically, PCHC claims that Intercorp submitted résumés of staff members, without authority, even though these staff members were never contacted nor ever agreed to work at Wildwood; and falsely represented that PCHC's Wildwood staff would work for Intercorp, even though it knew they had already refused to do so.

These claims must be resolved on the basis of information available at the time the bid was awarded.

Intercorp submitted résumés of six employees as possible back-up personnel. They did so without contacting these employees to specifically ascertain their willingness to work the Wildwood contract. Using a contract doctrine analogy, these employees were "samples" of "goods to conform to a sample product." Intercorp made no affirmative representation that these six individuals would actually become employees. Rather, Intercorp's affirmative representation was that it would staff Wildwood with individuals having like or similar qualifications.

■ The DOA and the DOC maintain that this contract was awarded on the basis that Intercorp's primary contract staff was to be compiled from its corporate inventory. These individuals might, or might not, be part of the present Wildwood staff. This is how DOA characterizes its consideration of the proposal and, given the clear requirements of the RFP, to do otherwise would have been arbitrary. There is substantial evidence to support this interpretation and a reasonable basis in the law to reach a conclusion that, under the circumstances, Intercorp's proposal did not amount to misrepresentation or fraud.

Similarly, there is substantial evidence to support DOC's and DOA's position that the

inclusion of these six résumés did not induce the State to enter into this contract.

PCHC characterizes the evidence as establishing that their Wildwood staff refused to work for Intercorp prior to these bids being submitted. Thus, according to PCHC, Intercorp's bid could not be responsive to the "timeline" requirement of the RFP. DOC and DOA interpret the same evidence to mean only that PCHC's existing staff declined to sign letters of commitment indicating they would work for Intercorp prior to the bid opening. If the incumbent staff decline to work for Intercorp, others were available from Intercorp's corporate inventory or other sources to satisfy the "timeline" requirements of the RFP.

There is substantial evidence to support the DOA's and the DOC's interpretation and a corresponding lack of evidence to support PCHC's interpretation.

Legally there is no duty for a bidder for a public contract to get letters of commitment from proposed staff members who are working for a competitor. This approach would be completely unrealistic and undermine the entire competitive bidding process. Likewise, if a proposed bidder contacts existing workers of his competitor, that bidder is under no duty to disclose the fact that the competitor's workers will not sign a letter of commitment in the bid process. It is simply irrelevant. What is relevant to the bid process is whether or not the bids received are responsive. This court has previously affirmed the decision of the DOA finding that Intercorp's bid was responsive.

Finally, there is no evidence that Intercorp could not provide nursing staff comparable to the résumés submitted in response to the RFP. Intercorp's plan to staff Wildwood relied on its ability to transfer or hire a qualified professional staff. It represented to the DOA and the DOC that it had the resources to do that, and the DOA and the DOC found this representation to be reasonable. There is no relevant evidence to the contrary.

For the foregoing reasons the decision of the Department of Administration is **AFFIRMED** in its entirety.

DATED at Kenai, Alaska, November 26th, 1994.

JONATHAN H. LINK
Superior Court Judge