**Ann–Marie YOST, M.D., Appellant,**

v.

**STATE of Alaska, DIVISION OF CORPORATIONS, BUSINESS AND PROFESSIONAL LICENSING, Appellee.**

No. S–13212.

Supreme Court of Alaska.

July 16, 2010.

---

Thomas V. Van Flein, Clapp, Peterson, Van Flein, Tiemessen & Thorsness, LLC, Anchorage, for Appellant.

Robert C. Auth, Assistant Attorney General, Anchorage, and Wayne Anthony Ross, Attorney General, Juneau, for Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and CHRISTEN, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A doctor encountered a problem with her medical license application. Rather than pursue the administrative adjudication process, she entered into a settlement agree-

ment providing, subject to the approval of the medical board, that she would be issued a license, fined, and reprimanded. The doctor asserts that the professional licensing division promised her an opportunity to address the Board before it considered approving the settlement and that this promise was a condition precedent to the settlement. The Division denies it made such a promise. The Board changed the meeting time without notifying the doctor and voted to approve the settlement without hearing from her. In response, the doctor filed a civil case for breach of contract. The superior court converted the case to an administrative appeal and affirmed the Board's decision. The doctor appealed. We hold that although the superior court properly treated the case as an administrative appeal, it was error to decide that no condition precedent existed without first conducting a trial de novo on the issue. Therefore, we vacate the superior court's decision and remand for trial.

## II. FACTS AND PROCEEDINGS

### A. Facts

#### 1. The application and settlement process

Dr. Ann–Marie Yost, a neurosurgeon, accepted a short-term assignment at the Alaska Native Medical Center [1] and, in January 2005, applied to the State of Alaska, Division of Corporations, Business and Professional Licensing (the Division) for a license to practice medicine in the state. The license application included question 32(a): "Have you ever been under investigation by any medical licensing jurisdiction or authority?" Dr. Yost answered: "No." In fact, as the Division soon became aware, Dr. Yost had five years earlier been the subject of an inquiry by the Washington state Medical Quality Assurance Commission, set in motion by a patient's complaint that Dr. Yost had misdiagnosed him. On March 31, 2005, Colin Matthews, a division employee assigned to conduct investigations for the Alaska State Medical Board (the Board), was tasked with resolving the discrepancy.

According to Dr. Yost, she answered "No" to question 32(a) out of a good faith belief that the Washington inquiry "did not constitute an 'investigation' for purposes of the application." Dr. Yost said she understood the term "investigation" to mean a formal proceeding with interviews, discovery, and a hearing, none of which the Washington inquiry entailed. Indeed, the entirety of the Washington inquiry involved a letter sent to Dr. Yost informing her of the patient complaint and asking her to turn over relevant records and to write a statement about the case. The hospital's legal team handled all correspondence and, six months later, the case was closed with a finding of no violations and no need for disciplinary action. Dr. Yost considered the incident a nuisance complaint and stated that "it did not even come to mind" when she reached question 32(a) on the Alaska medical license application.

Investigator Matthews had a different view of the incident. He understood that Washington had characterized its inquiry into Dr. Yost as an "investigation" and that Dr. Yost had been so notified. The initial letter to Dr. Yost—return address "Investigations Unit"—informed her that this was a "preliminary investigation," and that "no charges have been issued in connection with this investigation." The final letter Dr. Yost received informed her that the "investigation" was complete. To Matthews, whether Dr. Yost's answer to question 32(a) was innocent oversight or intentional fraud was irrelevant; the answer was false, and the statute [2] prohibiting false answers on license applications was indifferent to the reason.[3] Faced with

---

1. The medical center hired Dr. Yost to substitute while the hospital's only other neurosurgeon took leave. The position lasted approximately one month.

2. *See* AS 08.64.326(a)(1) ("The board may impose a sanction if the board finds ... that a licensee secured a license through deceit, fraud, or intentional misrepresentation."); AS 08.64.240(b) ("The board may refuse to grant a license to any applicant for the same reasons that it may impose disciplinary sanctions under AS 08.64.326.").

3. This case does not present, and we do not decide, the question of whether the Washington inquiry constituted an "investigation" for medical license application purposes, or whether the Board may deny a license based on a mistake or misunderstanding in the application process.

this dilemma, Dr. Yost could have allowed the application process to run its course; if the Board denied her application, she could have requested a hearing[4] complete with argument, discovery and testimony.[5] If this was unsuccessful, she could have appealed to the superior court, and if necessary appealed again to this court.[6] However, Dr. Yost was under a time constraint; her job with the Alaska Native Medical Center was set to begin the next day, April 1, 2005, and neurosurgeons in Alaska are not easily replaceable.

In search of a solution, Matthews consulted a board member who offered the opinion that this case should be dealt with just as similar cases had been handled in the past: Dr. Yost could enter into a memorandum of agreement (MOA) by which she would be granted a license, but the Board would impose a $1,000 fine and a reprimand. As soon as Dr. Yost signed the draft MOA, she could be issued a temporary license so she could begin her job. Then, if the Board adopted the MOA at its next meeting, a permanent license would be issued and the fine and reprimand would be imposed. If the Board rejected the MOA, Dr. Yost would be back where she started, free to pursue the hearing process.

On April 1, 2005, Dr. Yost's anticipated first day of work, Matthews called her and explained the MOA process, then spoke by phone with Dr. Yost's attorney, David Thorner, to work out the details. When an acceptable agreement was reached, Matthews faxed a copy of the proposed MOA to Thorner. That afternoon, Dr. Yost came into the Division office, signed the MOA, and was issued a temporary license.

This case arises from a disagreement about what else happened that day. Dr. Yost alleges that she signed the MOA on the express condition that before the agreement could be adopted as final, she would have the opportunity to appear before her peers on the medical board to explain directly her response to question 32(a), and ask that no

action be taken against her. She alleges that Matthews, on behalf of the Division, orally promised her and her attorney that she would have this opportunity, and that this condition was fundamental to her participation in the MOA. In her affidavit, Dr. Yost said that she "wholeheartedly disagreed" with the allegations against her and "would never have signed the [MOA] without the assurance made by Investigator Matthews that I would have a chance to explain myself to the Board at the meeting where the draft agreement would be presented." For its part, the Division acknowledges that Matthews told Dr. Yost that the Board's meetings were open to the public and offered to accommodate her request to listen in by teleconference, but the Division denies representing to Dr. Yost or her attorney that she would have an opportunity to address the Board, or even guaranteeing the time at which the matter would be considered.

The disagreement about what exactly Dr. Yost had been promised would have major ramifications. On April 21, 2005, the Board met to consider, among other things, whether Dr. Yost's MOA should be adopted as final. Dr. Yost and Thorner were prepared to telephone in to the meeting at 3:30 PM, the time they expected the matter would be considered.[7] The Board was running ahead of schedule, however, and it reached the Dr. Yost matter at 12:30 PM. The executive administrator of the Board, Leslie Gallant, advised the Board that Thorner wished to be on the phone while the matter was discussed but, despite several calls to his office and cell phone, Thorner could not be reached. Then, without Thorner or Dr. Yost on the line, the Board unanimously voted to adopt the MOA as final.

The next day, Thorner sent a letter to the Board saying:

> Dr. Yost signed the [MOA] with the understanding that she would be permitted to submit mitigating and explanatory infor-

---

**4.** AS 44.62.390.

**5.** AS 44.62.430–440.

**6.** AS 44.62.560; AS 22.05.010(c).

**7.** The record cites both 3:30 PM and 4:30 PM as the anticipated time the Board would discuss the Dr. Yost matter. The discrepancy is not explained and the one hour difference is not material to how the facts unfolded.

mation to the Alaska State Medical Board on April 21, 2005. Subsequently, Mr. Matthews confirmed with my office that the matter would be presented to the Board at 3:30 ... and that Dr. Yost and I would be permitted to participate by telephone.

Unfortunately, the matter was presented at 12:30 ... when I was in a deposition in another matter, with my cell telephone off. When I got out of that deposition ... [I] learned that the hearing had already taken place. . . .

Unfortunately, Dr. Yost was denied the opportunity of making her presentation to the Board. The purpose of this letter is to request that this matter be placed on the docket of the next board meeting for reconsideration. . . .

Weeks later, Thorner wrote again, but he did not receive a reply to either letter. Then, in a letter dated June 6, 2005, Dr. Yost was informed that the case was "now closed based on the Board's April 21, 2005 approval of the [MOA] you signed on April 1, 2005."

Dr. Yost has not practiced medicine in Alaska since her brief term at the Alaska Native Medical Center concluded in May 2005.

### 2. Evidence concerning whether the Division made a promise to Dr. Yost

Dr. Yost and Thorner [8] submitted affidavits saying that Matthews orally promised Dr. Yost the opportunity to address the Board before the MOA could be adopted. Matthews submitted an affidavit saying he never made that promise. Leslie Gallant, the medical board executive administrator, submitted an affidavit saying she spoke with Dr. Yost in Matthews' presence at the Division office after the MOA was signed and that Matthews did not make any promises to Dr. Yost at that time. In addition to these conflicting affidavits, the parties support their positions with competing selections from a cache of documentary evidence.

In a cover letter faxed to Thorner along with the proposed MOA, Matthews wrote "I will do my best to have the MOA reviewed by the Board during the April 21, 2005 meet-ing, however, as I advised you this date, the agenda is already quite full and that may not be possible. Dr. Yost and you could certainly attend the meeting either in person or telephonically." After Dr. Yost signed the draft MOA, Matthews' detailed log notes reflect that he told her "the MOA was on the April board meeting agenda for 4:30 PM April 21, 2005[and] she could come to this office and be on the phone at the time the Board reviews the MOA and that Mr. Thorner could also be on the line." Next, Matthews wrote "I have spoken with Atty Thorner and advised him ... that [Yost's] appt with the Board was for 4:30 PM, (est) on 04.21.05, that I had told Yost she could come to the office and we could hook her and Atty Thorner so they could be on line when board reviews the MOA." Finally, along with a confirmation that Dr. Yost's temporary license had been issued, Matthews faxed a handwritten note to Thorner which said "Appt with Board 4:30 P.M. (EST) 04.21.05." In his deposition, Matthews read this to mean: "[a]ppointment with board 4:30 p.m. estimated." On April 13, 2005, Matthews sent an email to Gallant informing her of the phone number where Thorner could be reached during the board meeting. The board meeting agenda included this note: "In the Matter of Anne–Marie Yost, MD Call Attorney David Thorner."

In his deposition, Matthews said "I never, in the 18 years I worked for the Division, told anyone they could go to a board meeting and present evidence, mitigating or otherwise. I routinely said, 'You can attend the board meeting, but they don't necessarily have to talk to you." He had no hesitation saying this, he explained, because "that's not the format for it. . . . If the board wants to ... ask you questions, they can do that. But I never guaranteed that anyone could talk to the board because ... that's not the way it's done. They don't do it."

To Dr. Yost, the above evidence demonstrates that everyone knew it was part of the deal that she and her attorney would have an opportunity to address the Board before the MOA could be finalized. To the Division, the evidence shows that while it tried to accom-

---

**8.** Thorner is not representing Dr. Yost before this court.

modate Dr. Yost and Thorner's desire to listen in on the public meeting, it never guaranteed the matter would be considered at a specific time, let alone promised Dr. Yost an opportunity to be heard.

### 3. The memorandum of agreement

The document that Dr. Yost signed on April 1, 2005, and the Board adopted on April 21, 2005, is divided into three sections: the "Memorandum of Agreement," the "Proposed Decision and Order," and the "Order." The "Memorandum of Agreement" provides in relevant part:

> 2. *Admission/Jurisdiction.* Yost admits and agrees that the Board has jurisdiction over the subject matter of her license in Alaska and over this Memorandum of Agreement (MOA).
>
> 3. *Admission/Facts.* Yost admits [that she answered "No" to question 32(b) when in fact she had been investigated by the State of Washington and that this is grounds for denial of her application.]
>
> 5. *Waiver of Rights.* Yost has consulted with an attorney . . . and understands she has the right to an administrative hearing on the facts in this case. She understands and agrees that by signing this agreement, she is waiving her rights to a hearing. Further, she understands and agrees that she is relieving the Division of any burden it has of proving the facts she admits above. Yost further understands and agrees that by signing this agreement she is voluntarily and knowingly giving up her right to present oral and documentary evidence, to present rebuttal evidence, to cross-examine witnesses against her, and to appeal the Board's decision to the Superior Court.
>
> 7. *Memorandum of Agreement, Decision and Order.* Yost agrees that the Board has the authority to enter into this MOA and to issue the following Order.

The "Proposed Decision and Order" section provided that Dr. Yost would be issued a license subject to a civil fine and reprimand, and concluded: "this Order shall take effect immediately upon its adoption by the Board. . . ." Dr. Yost signed the document at the end of this section under the line "I, Ann–Marie Yost, have read the MOA, understand it, and agree to be bound by its terms and conditions." Finally, the "Order" section consists of one sentence indicating the Board's adoption of the MOA. The "Order" is signed only by the Board chairperson.

### B. Proceedings

In January 2007 Dr. Yost filed a civil suit against the Division in superior court. She asserted two causes of action. First, Dr. Yost asserted breach of contract based on the Division's failure to give her an opportunity to address the Board. Second, Dr. Yost asserted that this failure entitled her to a declaration that the MOA was void.[9] Her prayer for relief included requests for a declaration and an injunction. Her complaint did not seek money damages.

The Division moved for summary judgment on several grounds, including that the complaint actually constituted an untimely administrative appeal. Dr. Yost opposed summary judgment on several grounds, including that the action was properly brought as a civil contract claim, and not an administrative appeal, because it collaterally challenged the validity of the contract between the Division and Dr. Yost and not the Board's action pursuant to the contract. Dr. Yost also moved the court to grant partial summary judgment finding that her ability to appear before the Board was a condition precedent to the MOA which the Division failed to fulfill.

After oral argument, Superior Court Judge Sharon L. Gleason decided to convert the civil action into an administrative appeal, adopting the Division's reasoning that the

---

**9.** Dr. Yost also asserted that she was entitled to an injunction requiring the Division to withdraw its report of discipline from the National Practitioner's Data Bank, a federally-maintained database of disciplinary actions used by state licensing boards, malpractice payers, hospitals, and professional societies. *National Practitioners*

*Data Bank,* "Frequently Asked Questions," http://www.npdb-hipdb.hrsa.gov/faq-General Information.html. State licensing authorities must report disciplinary actions against physicians to the NPDB. 42 U.S.C. § 11132; 45 C.F.R. § 60.8; AS 08.64.335.

action was properly characterized as administrative because it "essentially [sought] to set aside the Board's action that approved the memorandum of agreement." The court noted that while under normal circumstances the administrative appeal would be untimely—appeals from administrative agency decisions generally must be taken within 30 days[10]—here, the 30-day period never began to run because the Division never gave Dr. Yost notice of the deadline.[11] The superior court certified as the only question on appeal: "whether the Board's action should be invalidated because Dr. Yost did not address the Board in person when the memorandum of agreement was presented...." In light of the conversion to an administrative appeal, the court vacated the scheduled jury trial and denied most outstanding motions as moot. The court essentially denied the Division's motion for summary judgment as moot[12] and deferred ruling on Dr. Yost's motion for summary judgment.[13]

Both parties submitted appellate briefs in the superior court.[14] Dr. Yost argued that the Board's decision to adopt the MOA without first giving her an opportunity to be heard was both an abuse of discretion unsupported by substantial evidence[15] and a violation of the Division's contractual obligation to let her be heard. Dr. Yost also argued that the Division breached its duty of good faith by submitting a report to the National Practitioner's Data Bank[16] which mischaracterized the action taken.

The Division argued several grounds on which the Board's action should be upheld, including (1) that the evidence did not support the existence of a promise to let Dr. Yost speak; (2) that substantial evidence supported the Board's adoption of the MOA; and (3) that Dr. Yost's appeal was barred by the terms of the MOA itself. To support their evidentiary arguments, the parties drew on the affidavits, depositions, and documents submitted in support of previous motion practice while the case was still classified as a civil suit.

On July 3, 2008, Judge Gleason issued a memorandum decision affirming the Board's actions in full and dismissing the case. The court held that the Board's adoption of the MOA was not subject to a condition precedent, explaining that

> the plain, unambiguous language of the MOA does not include a condition precedent; nor does one arise by clear implication. Dr. Yost received a temporary license to practice medicine when she signed the MOA ... and agreed then, without conditions, to be bound by its terms. The evidence that Dr. Yost points to in support of her position ... merely indicates that the Division and the Board would *permit* Dr. Yost and her attorney to be present at the Board's meeting—not that their presence was required before the MOA could be approved. (Emphasis in original.)

The court also held that the content of the Board's report to the NPDB was not an abuse of discretion and was adequately supported by Dr. Yost's admissions in the MOA.[17]

Dr. Yost appeals.

---

10. AS 44.62.560; Alaska R.App. P. 602(a)(2).

11. Alaska R. of App. P. 602(a) ("The 30-day period for taking an appeal does not begin to run until the agency has issued a decision that clearly states that it is a final decision and that the claimant has thirty days to appeal.").

12. The court's written rulings "granted" the Division's summary judgment motion "in part," referring to its adoption of the Division's reasoning on the administrative appeal conversion issue.

13. The court also issued written rulings which restated its oral rulings.

14. Dr. Yost expressly reserved her right to challenge the court's conversion of her civil action to an administrative appeal.

15. Dr. Yost's argument was framed by the scope of review for administrative appeals provided in the Administrative Procedure Act. AS 44.62.570(b)-(c) (inquiry on appeal "extends to ... whether there was a prejudicial abuse of discretion .... [which] is established if [the court determines that] the findings are not supported by ... substantial evidence in the light of the whole record.").

16. For a discussion of the significance of this report, *see supra* note 9.

17. The court also rejected Dr. Yost's arguments that the Board violated the Administrative Procedure Act. A discussion of these arguments is not necessary to our resolution of the case.

## III. STANDARD OF REVIEW

▮▮▮▮ The proper interpretation of contract language is a question of law which we review de novo.[18] Whether a civil action in a superior court is properly converted to an administrative appeal is a question of law which we decide independently, adopting the best rule in light of precedent, policy and reason.[19] We review a superior court's decision not to grant a trial de novo in an appeal from an administrative agency for abuse of discretion and will uphold the superior court's decision unless we are left with a definite and firm conviction after reviewing the whole record that the trial court erred in its ruling.[20] We review grants of summary judgment de novo and "will affirm summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. When making this determination, we draw all reasonable inferences in favor of the non-moving party."[21]

## IV. DISCUSSION

▮▮▮▮ Although Dr. Yost raises several issues on appeal to this court, her core contention is that the superior court erred in converting her civil action to an administrative appeal rather than allowing her civil suit to proceed. We conclude that although the superior court properly treated the case as an administrative appeal, the court erred by not holding a trial de novo to determine the existence of a condition precedent to the MOA. Because we remand for a trial on this issue, we do not reach Dr. Yost's alternative arguments that the denial of a trial violated her constitutional rights to due process and witness confrontation.[22]

### A. The Terms Of The MOA Do Not Bar Dr. Yost's Appeal.

As a threshold issue, the Division urges us to hold that Dr. Yost's action, whatever its characterization, should be dismissed as barred by the terms of the MOA itself. Although the superior court did not rely on that conclusion in dismissing Dr. Yost's case, the Division suggests this as an alternate basis for affirming the superior court's decision.[23] The Division argues that Dr. Yost's appeal is barred by the MOA term in which Dr. Yost "knowingly and voluntarily" waived "her right ... to appeal the Board's decision to the Superior Court."

▮▮▮▮ When interpreting contract language, our goal is to give effect to the reasonable expectations of the parties.[24] Here, the language of the MOA and the purpose for which it was executed allow us to discern the parties' reasonable expectations with regard to

18. *Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1033 (Alaska 2003).

19. *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1023 (Alaska 2005) (citing *Brandon v. State Dep't of Corr.*, 938 P.2d 1029, 1031–32 (Alaska 1997)).

20. *South Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 778–79 (Alaska 2007).

21. *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997) (internal citations omitted).

22. In addition, we do not reach Dr. Yost's argument that the superior court's decision violated her constitutional right to a jury trial. Dr. Yost's attorney withdrew this argument at oral argument in light of Dr. Yost's concession that she was seeking only equitable relief and not money damages. *See State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 424 (Alaska 1982) (holding that no right to jury trial exists where plaintiff seeks only equitable relief).

Finally, we do not reach Dr. Yost's argument that a "preliminary investigation" is legally distinct from an "investigation," and therefore the Division's original basis for seeking disciplinary action was flawed. Because Dr. Yost raises this argument for the first time in her reply brief, it is waived. *See Danco Exploration, Inc. v. State, Dep't of Natural Res.*, 924 P.2d 432, 435 n. 1 (Alaska 1996). Even if Dr. Yost had not waived the issue, it is not properly before this court. Because Dr. Yost negotiated a settlement, neither the Board nor the superior court had occasion to determine the underlying question whether the Washington inquiry was legally an "investigation." Dr. Yost waived her right to challenge the legal basis for the disciplinary action when she entered into the MOA, and the only issue properly before this court is whether that MOA is valid.

23. *See United Parcel Serv. v. State, Dep't of Revenue*, 1 P.3d 83, 87 n. 23 (Alaska 2000) (holding that prevailing party may generally argue for affirmation on appeal on any legal theory).

24. *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655, 660 (Alaska 2005).

the waiver. Like a typical settlement agreement, the MOA attempted to facilitate the exchange of valuable promises between two parties with the goal of avoiding further litigation: Dr. Yost agreed to waive her right to an adjudicatory proceeding [25] and accept discipline in return for an unrestricted medical license; the Division agreed to waive its (asserted) right to deny Dr. Yost a license in return for the right to impose discipline without the full scale adjudicatory proceeding that would otherwise have been required.

■ The MOA itself states that the parties intended their agreement to "provide for the compromise and settlement of all issues which could be raised by [a denial of Dr. Yost's application] through a formal hearing process." The MOA provision titled "Waiver of Rights" lists the rights to which Dr. Yost would have otherwise been entitled under the Administrative Procedure Act, including the right to an administrative hearing,[26] the right to present oral and documentary evidence,[27] and the "right to appeal the Board's decision to Superior Court." [28] In this context, we conclude that the parties reasonably expected Dr. Yost's waiver of her right to appeal to encompass only the appeal rights associated with the administrative hearing to which Dr. Yost would have been entitled absent a settlement. Thus, while Dr. Yost is barred under the MOA from appealing the merits of the Board's decision to discipline her, she is not barred from challenging the enforceability of the underlying agreement which granted the Board power to act. To interpret the waiver as the Division suggests—to bar an appeal of the agreement's validity related to the violation of a condition—would presumably mean also finding a waiver of the right to challenge the validity of the agreement on other grounds, such as fraud [29] or duress.[30] This interpretation would be unreasonable.

Therefore, we reject the Division's argument that Dr. Yost's action should be dismissed as barred by the terms of the MOA.

**B. The Superior Court Did Not Err In Treating Dr. Yost's Civil Suit As An Administrative Appeal.**

Dr. Yost argues that the superior court erred in converting her civil action for breach of contract into an administrative appeal of the Board's decision. The Division argues that the superior court's conversion of the case was correct. The parties' divergent characterizations of this case stem from their different views of what the case is fundamentally about. To Dr. Yost, her case presents a straightforward attack on the validity of a contract. In her view, although she agreed to enter into a settlement with the Division, her consent to the agreement hinged on one express condition to which Matthews, a division representative, had agreed: that she would have the opportunity to appear before the Board, explain her mistake, and ask that they reject the MOA and issue her a license without qualification. Because this condition was never fulfilled, Dr. Yost argues, the MOA and the Board's order entered pursuant to it should be voided. To the Division, this is a case about an applicant seeking to set aside a routine administrative decision: the Board's decision to adopt the provisions of the MOA. Whatever contract theory it may invoke, Dr. Yost's desired remedy is still essentially a judgment voiding an administrative decision, and therefore only an administrative appeal is appropriate.

■ We have consistently held that "[h]owever denominated, a claim is functionally an administrative appeal if it requires the court to consider the propriety of an agency determination." [31] When a court

**25.** AS 08.64.326 (hearing must precede disciplinary sanctions); AS 08.64.160 (board shall comply with Administrative Procedure Act).

**26.** *See* AS 44.62.390(a)(1).

**27.** *See* AS 44.62.430–440.

**28.** *See* AS 44.62.560.

**29.** *Cousineau v. Walker*, 613 P.2d 608, 613 (Alaska 1980) (holding that fraudulent or material

misrepresentation may be grounds for voiding contract).

**30.** *Helstrom v. N. Slope Borough*, 797 P.2d 1192, 1197 (Alaska 1990) (duress may be grounds for voiding contract).

**31.** *Haynes v. State, Commercial Fisheries Entry Comm'n*, 746 P.2d 892, 893 (Alaska 1987). *Accord Carlson v. Renkes*, 113 P.3d 638, 641 (Alaska 2005); *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853

could not grant the relief requested without reversing the prior agency determination, the claim should be treated as an administrative appeal.[32] A decision of the Board is considered an "agency determination" for purposes of this analysis.[33] Here, although Dr. Yost framed her argument in contract theory terms, it is inescapable that her request to void the MOA functionally required the superior court to consider the propriety of the Board's decision to adopt it. The court could not have granted Dr. Yost the relief she sought without simultaneously reversing the Board's decision. Therefore, we conclude that the superior court correctly characterized Dr. Yost's action as an administrative appeal.

### C. It Was Error To Deny A Trial De Novo To Determine The Existence Of A Condition Precedent To The MOA.

In an appeal to the superior court from an administrative agency, the superior court has discretion to grant a trial de novo in whole or in part.[34] Although a court normally reviews an agency's decision on the record, we have upheld or directed application of de novo review "where the agency record is inadequate; where the agency's

procedures are inadequate or do not otherwise afford due process; or where the agency ... excluded important evidence in its decision-making process." [35] Although it is rarely warranted,[36] an appellant has a right to a trial de novo "if an administrative adjudicative procedure does not afford due process." [37] In *Keiner v. City of Anchorage*,[38] we held that the requirements of procedural due process were satisfied in the administrative adjudication context when:

> [t]he Board made its findings only after due notice and full opportunity to be heard; the conduct of the hearing was consistent with the essentials of a fair trial; there is no assertion that the Board was anything but impartial; and a complete record of the proceedings was kept so that the reviewing court was able to determine that there was no substantial failure to observe applicable rules of law and procedure, and that in all other respects [the appellant] was afforded a fair hearing.[39]

Here, we conclude that it was error to affirm the Board's decision without first conducting a trial de novo to determine the existence of a condition precedent.[40] We reach this conclusion because of the unusual course of proceedings below. The agency

P.2d 518, 524 (Alaska 1993); *Fairbanks N. Star Borough v. State*, 826 P.2d 760, 762 (Alaska 1992); *Diedrich v. City of Ketchikan*, 805 P.2d 362, 365 (Alaska 1991); *Owsichek v. State, Guide Licensing & Control Bd.*, 627 P.2d 616, 619 (Alaska 1981).

32. *Haynes*, 746 P.2d at 893; *Diedrich*, 805 P.2d at 366 (holding administrative appeal was proper where "superior court could not have granted the requested relief without reversing the Board's determination").

33. *See State v. Lundgren Pac. Const. Co.*, 603 P.2d 889, 892 (Alaska 1979) (holding Board of Adjustment to be administrative agency for purposes of characterizing challenges to its determinations and defining administrative agency as "a governmental authority, other than a court and other than a legislative body, which affects the rights of private parties through either adjudication or rule making").

34. AS 22.10.020(d); Alaska R.App. P. 609(b)(1).

35. *South Anchorage Concerned Coal., Inc. v. Municipality of Anchorage Bd. of Adjustment*, 172 P.3d 774, 778 (Alaska 2007).

36. *Id.*

37. *Lundgren Pac. Const. Co., Inc.*, 603 P.2d at 895.

38. 378 P.2d 406 (Alaska 1963).

39. *Id.* at 409–10.

40. We note that Dr. Yost did not specifically request a trial de novo after the superior court converted the case to an administrative appeal. "Arguments not raised in the trial court are waived and will not be considered on appeal, except to the extent that plain error has been committed. Plain error exists where the trial court has made an obvious mistake...." *Wettanen v. Cowper*, 749 P.2d 362, 364 (Alaska 1988) (citations omitted). Here, because we conclude that the court's failure to conduct a trial de novo was plain error, especially in light of Dr. Yost's vigorous pursuit of a trial in the civil context, we hold that Dr. Yost did not waive the possibility of a trial de novo in the administrative context.

determination that is the subject of this appeal is the Board's decision to adopt the MOA. This decision was made by a vote of the Board with no other procedural formalities. Although the Board was aware that Dr. Yost's attorney wished to be present for the vote, the Board made no findings relating to the disputed condition precedent, indeed, it is unclear that the Board was aware that such a dispute existed. At the superior court level, the court defined the question on appeal as: "whether the Board's action should be invalidated because Dr. Yost did not address the Board in person when the [MOA] was presented...." It answered this question in the negative.

The superior court's decision attempted to apply the standards of review typically used by superior courts reviewing agency decisions, including the "substantial evidence" test for questions of fact.[41] However, the decision did not actually apply this standard to the crucial factual question: whether the Division had promised Dr. Yost an opportunity to appear before the Board. Rather than reviewing an agency finding on the existence of such a promise to determine whether that finding was supported by substantial evidence—which it could not do as the question was never considered at the agency level—the court implicitly engaged in first-instance factfinding. The court reviewed the affidavits and documentary evidence previously submitted by the parties in support of their summary judgment motions and concluded on the basis of this evidence that "the MOA does not include a condition precedent." The court explained that the "evidence that Dr. Yost points to in support of her position ... merely indicates that the Division and the Board would *permit* Dr. Yost and her attorney to be present at the Board's meeting— not that their presence was required before the MOA could be approved." (Emphasis in original.)

We conclude that it was an abuse of discretion to make this finding without conducting a trial de novo. Dr. Yost had the right to a trial de novo on the issue of a condition precedent because the administrative proceedings—in this case, a vote by the Board to adopt the MOA—did not afford her due process on this outcome-determinative issue.[42] The administrative proceeding lacked important hallmarks of procedural due process, such as notice and an opportunity to be heard.[43] This is, of course, because there was no agency proceeding which considered the existence of a condition precedent. Thus, due process entitled Dr. Yost to a trial de novo on this issue. The court's decision, which made factual findings without the benefit of live testimony or cross-examination, does not satisfy the requirement of due process.

### D. The Failure To Conduct A Trial De Novo Was Not Harmless Error.

The Division argues that even if the superior court erred by not conducting a trial de novo, any error was harmless because the Division was entitled to summary judgment on the condition precedent issue.[44] When a superior court conducts a trial de novo in an appeal from an administrative agency, all proceedings in the action "are governed by the rules governing procedures in the superior court."[45] This includes the summary judgment procedures set out in Alaska Rule of Civil Procedure 56.[46]

---

**41.** *See Lakloey, Inc. v. Univ. of Alaska,* 157 P.3d 1041, 1045 (Alaska 2007).

**42.** *See Lundgren Pac. Const. Co., Inc.,* 603 P.2d at 895 (holding that appellant has right to trial de novo "if an administrative adjudicative procedure does not afford due process").

**43.** *Keiner,* 378 P.2d at 409–410.

**44.** Specifically, the Division suggested during oral argument that we review the superior court's memorandum decision as if it were a grant of summary judgment and affirm on the basis that summary judgment was proper. Although not designated as such, the court's decision did essentially function as a ruling on summary judgment because it drew from the affidavits and other evidence submitted in support of the parties' prior summary judgment motions. *See* Alaska R. Civil P. 56(c) (describing types of evidence that may be used to support motion for summary judgment).

**45.** Alaska R.App. P. 609(b)(2).

**46.** *See Nenana City Sch. Dist. v. Coghill,* 898 P.2d 929, 932 (Alaska 1995) (holding that application of summary judgment rules is identical whether case was treated as administrative appeal or independent civil suit).

We review grants of summary judgment de novo and "will affirm summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. When making this determination, we draw all reasonable inferences in favor of the non-moving party."[47] The party opposing summary judgment, in this case Dr. Yost, need not establish that it will ultimately prevail at trial "but only that there exists a genuine issue of fact to be litigated."[48]

Here, Dr. Yost argues that summary judgment would be inappropriate because there is a genuine issue of material fact as to the existence of a condition precedent to the MOA. We agree with Dr. Yost that the evidence raises an issue of fact which must be litigated. Both Dr. Yost and her then-attorney Thorner submitted affidavits asserting that Matthews promised them an opportunity to address the Board. Matthews wrote a note to Thorner stating that Dr. Yost had an "appointment" with the Board.[49] Matthew's log notes also reference Dr. Yost's "appointment" with the Board and the board meeting minutes show that the Board knew Dr. Yost's attorney wished to be contacted. In addition, evidence of Thorner's contemporaneous understanding of the situation can be found in the letter he wrote to the Board the day after the MOA was adopted; in the letter, he asked the Board to reconsider the MOA at its next meeting because "Dr. Yost signed the [MOA] with the understanding that she would be permitted" to address the Board, and "was denied the opportunity of making her presentation." Certainly the credibility of Dr. Yost and Thorner must be weighed against that of Matthews and Gallant, who both submitted affidavits asserting no promise was made. However, "[c]redibility is a factual issue ... properly determined by the factfinder at trial, not a matter of law determined by the court in summary judgment."[50] Similarly, while we agree with the Division that the evidence could give rise to an inference that Matthews told Dr. Yost she could attend the meeting but never promised she could participate, on summary judgment we must draw all reasonable inferences in favor of the non-moving party.[51]

The Division argues that it is entitled to summary judgment because the condition was not memorialized in the MOA and if Dr. Yost's "participation at the board meeting was 'key to the whole MOA process,' then that participation should have been specified in the MOA." The Division provides no support for this proposition and we do not find any.[52] In addition, the Division argues that it is entitled to summary judgment because Dr. Yost's asserted condition conflicts with terms contained in the MOA and a contract should not be given an interpretation which

**47.** *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997) (internal citations omitted).

**48.** *Alaska Rent-A-Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136, 1139 (Alaska 1974).

**49.** As evidence that Matthews never guaranteed Dr. Yost an opportunity to speak, the Division points to Matthews's earlier note to Thorner saying "I will do my best to have the MOA reviewed by the Board during the April 21, 2005 meeting, however ... that may not be possible." However, this note was written before the MOA was signed and does not foreclose the possibility that the details were cemented sometime before Matthews's subsequent note about the "app[oint-men]t with board."

**50.** *Broderick v. King's Way Assembly of God Church*, 808 P.2d 1211, 1216 (Alaska 1991).

**51.** *Howell*, 943 P.2d at 1207 (internal citations omitted).

**52.** Perhaps the Division means to reference the parol evidence rule, which holds that "an integrated written contract may not be varied or contradicted by prior negotiations or agreements." *Alaska Diversified Contractors, Inc. v. Lower Kuskokwim Sch. Dist.*, 778 P.2d 581, 583 (Alaska 1989). A written agreement is "integrated" if it "in view of its completeness and specificity reasonably appears to be a complete agreement, ... unless it is established by other evidence that the writing did not constitute a final expression." *Lower Kuskokwim Sch. Dist. v. Alaska Diversified Contractors, Inc.*, 734 P.2d 62, 64 (Alaska 1987) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 209(3) (1981)). The question of integration is one for the court. *Id.* at 63. Here, the MOA is not an integrated agreement. The agreement does not contain an "integration clause" and Matthews in his deposition stated that an applicant's desire to appear before the Board is "not something you would put in the MOA to start with." Thus, evidence of a consistent additional term is not barred as a matter of law.

creates conflict among its provisions.[53] This argument is misplaced. This case does not involve an ambiguous contract term that requires a court's "interpretation," but rather involves the factual question whether an additional term exists. If the court on remand finds that a condition precedent is a part of the agreement, it is at that point that the court should apply interpretive rules to resolve any ambiguity.

■ Finally, the Division argues that it is entitled to summary judgment because contract conditions are disfavored under Alaska law. The Division is correct that to be enforceable, a condition generally must be expressed in plain language or arise by clear implication.[54] The purpose of this rule is to avoid the risk of forfeiture that may result when "a slight failure to perform wholly destroys all rights under the contract."[55] Under these circumstances, however, the purpose of the rule would not be served by its strict application. Dr. Yost asserts that an opportunity to address the Board was "fundamental" to her participation in the agreement; thus, the denial of that opportunity cannot be a called a "slight failure to perform." In addition, the Division faces no undue risk of forfeiture because the occurrence of the condition is entirely within its power; to satisfy the condition and obtain the full benefit of the bargain, the Board needed only to provide Dr. Yost an opportunity to be heard.[56] Therefore, we conclude that the interpretive rule does not apply to the facts of this case.[57]

In sum, we conclude that Dr. Yost has raised a genuine issue of material fact as to the existence of a condition precedent to the MOA, making the issue inappropriate for resolution on summary judgment. Therefore, the superior court's failure to conduct a trial de novo on that issue was not harmless error. On remand, the court should conduct a trial to determine whether the Division promised Dr. Yost that she could address the Board before it voted on adoption of the MOA. If the court finds such a promise, then the matter should be remanded to the Board to provide Dr. Yost that opportunity. If the court does not find such a promise, then it should affirm the Board's decision.[58]

## V. CONCLUSION

Because Dr. Yost's claim required the court to consider the propriety of an agency determination, we hold that the court correctly treated her civil case as an administrative appeal. However, because the agency proceeding did not provide due process on the condition precedent question, we hold that Dr. Yost was entitled to a trial de novo. Because the Division is not entitled to summary judgment on the condition precedent issue, we hold that the erroneous denial of a trial de novo was not harmless. Therefore, we REMAND to the superior court for further proceedings consistent with this opinion.

EASTAUGH, Justice, not participating.

---

**53.** *McBain v. Pratt,* 514 P.2d 823, 828 (Alaska 1973).

**54.** *Jarvis v. Ensminger,* 134 P.3d 353, 358 (Alaska 2006).

**55.** *Id.* at 358 nn. 13 & 15.

**56.** *See id.* at 358 n. 13 (citing RESTATEMENT (SECOND) OF CONTRACTS § 227 (1981)) (interpretive rule disfavoring conditions does not apply if "the event is within the obligee's control").

**57.** We note that even if the rule did strictly apply here, it would not result in a grant of summary judgment to the Division. In our view, the evidence does raise a genuine issue of fact as to whether a condition precedent arose by "clear implication."

**58.** Dr. Yost also argued that her civil case should have been allowed to proceed on a "bad faith" theory arising from the contents of the Board's report to the National Practitioner's Data Bank. The Division responded that Dr. Yost had no private cause of action based on the report and that she had waived her administrative remedy. Because we remand for trial on the condition precedent issue, we do not reach Dr. Yost's bad faith claim.