**Wallace H. KEINER, Appellant,**

v.

**CITY OF ANCHORAGE, Appellee.**

**No. 240.**

Supreme Court of Alaska.

Feb. 6, 1963.

---

2. Hanrahan v. City of Anchorage, Opinion No. 121, 377 P.2d 381 (Alaska 1962).

Bailey E. Bell and Francis J. Nosek, Jr., Bell, Sanders & Tallman, Anchorage, for appellant.

Richard O. Gantz, Harland W. Davis and Vasken Minasian, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

DIMOND, Justice.

Following an administrative hearing, the City of Anchorage declared Keiner's building to be a fire and health hazard and a public nuisance and ordered it removed. On appeal to the superior court Keiner's request for a de novo hearing was refused, the case was heard on the record, and the city's determination was affirmed. On appeal to this court Keiner makes two main points: (1) that he was entitled to a trial de novo in the superior court; and (2) that the evidence produced at the administrative hearing did not justify removal of the building.

The Code of Ordinances of the City of Anchorage prohibits a person from maintaining any structure which is unsafe, or which is a menace to the health, morals, or

safety of the public, or which has become a fire or health hazard or a public nuisance.[1] Other parts of the code specify the procedure to be followed in determining whether a particular building is in violation of the code, and if so, whether it must be removed or may be repaired.[2]

In accordance with the code provisions, Keiner's structure was inspected by the city building inspector. The inspector's report to the city manager, after stating his findings, recommended that the building be declared a public nuisance and be demolished. Reports from the fire department, city sanitarian, and State Department of Health substantiated the building inspector's findings and conclusions. Based upon these reports, the city manager made and had served on Keiner written findings and an order that the building be demolished. Keiner filed objections, and then a public hearing was held by the city council acting as a board of adjustment. Following the hearing, the board found that the building was a fire and health hazard and a public nuisance, and provided by ordinance for its removal.[3]

When Keiner appealed to the superior court he requested that the matter be heard there de novo and that he be given a jury trial. These requests were not granted. The court reviewed the record of evidence and proceedings before the board, found the record to be complete and sufficient and free from reversible errors, and affirmed the board's decision.

■ Keiner claims that this procedure deprived him of a constitutional right. He takes the position that a decision that the building must be removed involved the exercise of judicial power; that he was therefore entitled to a judicial determination of the question of whether the building was in fact a public nuisance and a fire and health hazard; that this question could not be judicially determined merely by court review of the evidence and proceedings at the board hearing, but necessitated a de novo taking of evidence and making of findings of fact by the court; and that unless that is done, enforcement of the board's order for removal of the building will deprive him of his property without due process of law.

In support of that argument, Keiner invokes the "Ben Avon doctrine", established by the United States Supreme Court in 1920 in Ohio Valley Water Co. v. Ben Avon Borough.[4] In that case the superior court of Pennsylvania had reversed a finding of the Public Service Commission as to the value of property in computing a water rate. The Pennsylvania supreme court reversed on the ground that since there was competent evidence to sustain the commission's conclusion and no abuse of discretion was apparent, the lower court had no right to substitute its judgment for that of the commission as to the fair value of the property. The United States Supreme Court reversed. It concluded that the state supreme court's decision had the effect of withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the public service commission came to be considered on appeal. The rule which was then laid down, and which has come to be known as the Ben Avon doctrine, was this: "In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determi-

1. Anchorage, Alaska, Code of Ordinances § 9–3 (1957).

2. Anchorage, Alaska, Code of Ordinances §§ 9–4 to 9–9 (1957).

3. Anchorage, Alaska, Code of Ordinances § 9–6 provides in part: "After the hearing is concluded, the board of adjustment shall enter its findings in the matter and may provide by ordinance for the condemnation of any building which shall have been found to be a fire or health hazard or public nuisance and to order or cause the removal or demolition of such building * * *."

4. 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920).

nation upon its own independent judgment as to both law and facts; otherwise the order is void because in conflict with the due process clause, Fourteenth Amendment." [5]

■ If this doctrine still retains any force,[6] it would have no application here. The crux of Keiner's argument is that he was constitutionally entitled to a de novo hearing before the superior court. This is not what Ben Avon stands for. That doctrine required only that there be an independent judicial judgment on issues decided by a non-judicial body when confiscation of property is claimed. The doctrine does not require a de novo taking and weighing of evidence by the reviewing court.

Conceivably Keiner would be entitled to a trial de novo, in whole or in part, if he had been denied the opportunity to present to the board of adjustment relevant and material evidence supporting his claim of confiscation.[7] But he makes no such claim. His contention is that he should be able to relitigate factual questions simply because a constitutional right is involved. Due process does not require that.[8]

Keiner contends that he is entitled to a trial de novo because the board proceedings did not provide him with the procedural safeguards which the due process clause assures. He claims that rules of evidence were not followed; that there was no determination as to what matters were competent or incompetent, relevant or irrelevant; that leading and suggestive questions were propounded to witnesses; that exhibits were not marked for identification nor marked as exhibits; and that all records, papers, files, pictures and reports, which were submitted by the city clerk to the superior court as the record on appeal, had never been subject to cross examination by Keiner.

Broad assertions and suggestions that various rules of evidence were not followed, without particularization or a showing of prejudice, is of no assistance to this court in determining whether there is any merit to Keiner's claims.[9] An examination of the entire record fails to disclose a denial of or interference with fundamental rights. The board made its findings only after due notice and full opportunity to be heard; the conduct of the hearing was consistent with the essentials of a fair trial; there is no assertion that the board was anything but impartial; and a complete record of the proceedings was kept so that the reviewing court was able to determine that there was no substantial failure to observe applicable rules of law and procedure, and that in all other respects Keiner was afforded a fair

5. Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 289, 40 S.Ct. 527, 528, 64 L.Ed. 908, 914 (1920).

6. Although the Ben Avon doctrine has never been expressly overruled, it no longer appears to have any vigor as a principle of constitutional law. In his treatise on administrative law, Professor Davis concludes an extensive discussion of the doctrine by saying: "The significant fact about the Ben Avon doctrine is not that a handful of state courts follow the doctrine because the Supreme Court has failed to overrule it explicitly. The significant fact is that despite the lack of explicit overruling, the Supreme Court since 1936 has frequently refused to reassert the doctrine, even though numerous cases are finally disposed of by the lower federal courts in violation of the doctrine and even though at least eight-

een state courts have specifically acknowledged some degree of violation of the doctrine." 4 Davis, Administrative Law § 29.09, at 180 (1958).

7. American Trucking Ass'ns., Inc. v. United States, 344 U.S. 298, 320–321, 73 S.Ct. 307, 319, 320, 97 L.Ed. 337, 361 (1953).

8. See Alabama Public Service Comm'n v. Southern Ry., 341 U.S. 341, 348–349, 71 S.Ct. 762, 767–768, 95 L.Ed. 1002, 1008 (1951).

9. See City of Fairbanks v. Schaible, Opinion No. 97, 375 P.2d 201, 211 (Alaska 1962); Clay v. Sandal, Opinion No. 74, 369 P.2d 890, 893 (Alaska 1962); Parks v. Brown, Opinion No. 57, 368 P.2d 220 (Alaska 1962); Veal v. Newlin, Inc., Opinion No. 53, 367 P.2d 155 (Alaska 1961).

hearing. This satisfies the procedural requirements of due process of law.[10]

Keiner next argues that a statute gives him the right to a de novo appeal. He refers to Section 16–1–35, Twenty-fourth, A.C.L.A.1949, [AS 29.10.213–243] which authorizes a city council to adopt building and zoning regulations and to provide for the condemnation of buildings which have become fire or health hazards or public nuisances. The council is constituted a board of adjustment to hear and decide appeals from administrative determinations, and detailed provisions are made for appeals from the board to the district court.[11] The portion of the statute which Keiner relies upon is the statement that when an appeal is taken from a decision of the board of adjustment, "Said case shall be heard and tried de novo in the District Court."

■ This provision does not govern the procedure in the state superior court. Legislative enactments subsequent to statehood, and a procedural rule adopted by this court after creation of the state judicial system, show an obvious intent that where appeals are taken from administrative agencies or magistrate courts there shall not be a trial de novo unless the superior court requires it.[12] This procedure simplifies and expedites the handling of appeals.[13] At the same time, it affords sufficient flexibility so that if the agency record is not sufficient to determine the issue on appeal, or if the record discloses that justice requires evidence to be taken de novo, the superior court has the discretion to do what is necessary by granting a new trial or hearing, either in whole or in part. In this case the court did not abuse its discretion in limiting review to the record taken before the board.

■ Keiner contends that the term "administrative agency", as used in S.L.A.1959, ch. 50, § 17(1) (a) [AS 22.10.020(a)] [14] refers only to agencies which are created by the state legislature. There is nothing in the wording of the statute, or in its legislative history, which persuades us to adopt such an interpretation. We conclude that the term "administrative agency" should be construed broadly so as to include a municipal council, acting as a board of adjustment, since it is in fact performing administrative functions.

10. See Concurring opinion of Mr. Justice Brandeis in St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 73, 56 S.Ct. 720, 735, 80 L.Ed. 1033, 1052 (1936); 4 Davis, Administrative Law § 29.09, at 166–167 (1958).

11. Section 16–1–35, Twenty-fourth, A.C.L.A.1949 [AS 29.10.213–243] was enacted prior to Alaska becoming a state, and the "district court" referred to in that section was the United States District Court for the Territory of Alaska. That court since statehood has been replaced by the superior court for the State of Alaska. State v. Linn, Opinion No. 47, 363 P.2d 361, 363 n. 7 (Alaska 1961); Hobbs v. State, Opinion No. 26, 359 P.2d 956, 958–963 (Alaska), cert. denied, 367 U.S. 909, 81 S.Ct. 1923, 6 L.Ed.2d 1250 (1961).

12. S.L.A.1959, ch. 50, § 17(1) (a) [AS 22.10.020(a)] states in part: "All hearings on appeal from any final order or judgment of a subordinate court or administrative agency shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."
S.L.A.1959, ch. 184, § 20(3) as amended by S.L.A.1960, ch. 5, § 3 [AS 22.15.240 (c)] concerning appeals from the magistrate court states in part: "All appeals shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."
The Alaska Administrative Procedures Act provides with respect to appeals from decisions of state administrative agencies that "Superior Courts shall on appeal have the right to augment the agency record in whole or in part, even to the extent of holding a hearing de novo." S.L.A.1959, ch. 143, art. VII, § 25(4) [AS 44.62.570(d)].
Civ.R. 107(a), relating to appeals from magistrate courts, states that "All appeals shall be on the record unless the superior court, in its discretion, shall grant a trial de novo, in whole or in part."

13. Lee v. State, Opinion No. 107, 374 P.2d 868, 869–870 (Alaska 1962).

14. Note 12 supra.

■ Keiner next argues that he is being deprived of his property without due process of law because there is no reasonable basis in fact for the board's finding that the building was a fire and health hazard and a public nuisance. In dealing with this issue we apply the rule that the board's findings should not be reversed if in the light of the whole record they are supported by substantial evidence,[15] i. e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[16]

■ Judged by that test, we conclude that the superior court was justified in sustaining the findings and decision of the board of adjustment. Keiner's building was a two-story, wood frame structure, approximately 30 years old. It was used as his residence and as a rooming house with 14 or 15 living units. A health sanitarian testified that the building had three toilet stools and two showers available for the use of from 14 to 20 persons; that the lighting and ventilation in some of the bedrooms was inadequate; and that parts of the interior walls offered a harborage for insects and access for mice. The city's building inspector testified that the wood foundation for the building was rotten, and that if this condition were allowed to continue it would affect the doors, windows and plumbing; and that in his opinion the "main danger" consisted of the absence of a central heating system and the presence of individual oil stoves in each room or apartment. A captain of the fire department gave his opinion that from the standpoint of fire there was a serious danger to the occupants of the building. He stated that if a fire started, the building would burn rapidly because it was of wood frame construction, with interior finishing that was combustible, had a tar and tar paper roof, had combustible tar shingles on the outside, and had no fire stops in the attic; and because of the numerous individual oil-burning heaters located throughout the building. He said that the potential loss of life would be great because there were many occupants of the building, each apartment had only one exit, and the only means of escape from the second floor was down a narrow stairwell. It was also his opinion that if the rotten foundation should fail in any way it could affect the doors and means of escape from the building.

In the light of this evidence, and of the entire record, we cannot say that there was no substantial evidence from which the board could reasonably conclude that the building was a fire and health hazard and a public nuisance, and that public safety required abatement of this condition.

Keiner's final point, presented somewhat cursorily in his brief, is that if abatement is required, then destruction or removal of the building would not be authorized if the hazardous condition could be eliminated in some other manner. However, he does not suggest how this might be accomplished. In fact, while testifying before the board, he indicated quite clearly that he would be able to do nothing to remedy the situation for at least five years.

The building inspector testified that under the city building code, repairs of a type not in conformity with the strict code requirements may be made only to the extent that the cost of repairs does not exceed 50% of the depreciated value of the building. He said that as to Keiner's structure this limitation would be exceeded, because 50% of the depreciated value of the building was approximately $2,000; and the cost of necessary repairs, such as foundation work, and installation of bathrooms and a central heating system, would exceed $10,000.

15. See ICC v. Union P. R. R., 222 U.S. 541, 547–548, 32 S.Ct. 108, 110–111, 56 L.Ed. 308, 311 (1912); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

16. Consolidated Edison Co. of N. Y. v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 216, 217, 83 L.Ed. 126, 140 (1938). See N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 299–300, 59 S.Ct. 501, 504–505, 83 L.Ed. 660, 665 (1939).

In view of this testimony, and of Keiner's inability to do anything to remedy the hazardous condition for at least five years, it was not unreasonable for the board to determine that the fire and health hazard could not be corrected or made safe except by demolition or removal of the building.[17]

The judgment is affirmed.

17. Anchorage, Alaska, Code of Ordinances § 9-6 provides in part as follows:

"After the hearing is concluded, the board of adjustment shall enter its findings in the matter and may provide by ordinance for the condemnation of any building which shall have been found to be a fire or health hazard or public nuisance and to order or cause the removal or demolition of such building; provided, however, that the owner shall be given at least thirty days after the hearing within which to remove the objectionable building or buildings before the city may proceed to do so. * * *

"In the event that the board determines that a dangerous condition, public nuisance, fire or health hazard exists which may be corrected or made safe without the necessity of demolition or removal of the building, the board shall allow alteration, repair or reconstruction of the building under such terms and conditions as the board may find proper."