**Dená Nená HENASH d/b/a Tanana Chiefs Conference, Appellant,**

v.

**FAIRBANKS NORTH STAR BOROUGH, Appellee.**

No. S–13340 CI.

Supreme Court of Alaska.

Nov. 10, 2011.

Michael J. Walleri, Tanana Chiefs Conference, Fairbanks, and Lloyd B. Miller, Sonosky, Chambers, Sachse, Miller & Munson, LLP, Anchorage, for Appellant.

Cynthia M. Klepaski, Assistant Borough Attorney, and A. René Broker, Borough Attorney, Fairbanks, for Appellee.

Kathie Wasserman, Alaska Municipal League, Juneau, for Amicus Curiae Alaska Municipal League.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A Native nonprofit corporation applied to the borough assessor for charitable-purpose tax exemptions on several of its properties. The assessor denied exemptions for five of the parcels, concluding that they did not meet the exemption's requirements. The superior court affirmed the denial as to four of the properties and remanded the case for consideration of one property back to the assessor, who granted the exemption. The nonprofit corporation appeals the denial of exemptions for three of the remaining properties plus a portion of the fourth, and appeals the superior court's award of attorney's fees to the borough. Because the properties in question were used exclusively for charitable purposes, we reverse the assessor's determination on the four appealed properties, vacate the attorney's fees award, and remand for an award of fees in light of this opinion.

## II. FACTS AND PROCEEDINGS

Tanana Chiefs Conference, Inc. (TCC), also known as Dená Nená Henash, is a regional Native nonprofit corporation that provides health services, social services, and community development services to Native entities and individuals throughout Interior Alaska. TCC owns several properties in the Fairbanks North Star Borough (the Borough), including the David Salmon Tribal Hall, the Chief Peter John Tribal Building, and the Al Ketzler, Sr., Building. Some of TCC's properties house TCC's own operations, while others are leased to outside entities. TCC and the borough assessor have disputed the tax status of TCC's property in the past.[1]

In October 2005, TCC submitted applications to the borough assessor seeking exempt status for 22 parcels under the charitable-purpose exemption of state law.[2] The assessor initially decided that one parcel was fully exempt, found that a number of properties were spatially apportioned between exempt and non-exempt portions, but disputed the eligibility of the others. TCC appealed the assessment notices on the remaining 21 parcels, though it subsequently withdrew three of its exemption applications. In May 2006, the borough assessor and some of his

---

1. *See Fairbanks N. Star Borough v. Dená Nená Henash,* 88 P.3d 124 (Alaska 2004).

2. *See* AS 29.45.030.

staff conducted a walk-through of several of the disputed properties. A hearing was held before the borough assessor in June 2006. The assessor issued findings of fact and conclusions of law for the 18 remaining parcels in September 2006, concluding that ten of the parcels were partially exempt and eight of the parcels were non-exempt. TCC appealed to the superior court as to five of the parcels. The superior court, acting as an intermediate appellate court, upheld the assessor's determination as to four parcels: the David Salmon Tribal Hall, the second floor of the Chief Peter John Tribal Building, the fourth floor of the Chief Peter John Tribal Building, and the first and second floors of the Al Ketzler, Sr., Building. The court also remanded the case for consideration of the fifth parcel—consisting of rooms 512, 524, and 525 of the Chief Peter John Tribal Building—back to the borough assessor for more detailed findings. On remand, the assessor held a hearing, permitted TCC to supplement the record, and ultimately granted the parcel exempt status. In October 2008, the superior court resolved the appeal as to four remaining parcels. One month later, the court awarded TCC $455.55 in attorney's fees and $13.42 in costs. Simultaneously, the court ordered TCC to pay the Borough $38,416 in attorney's fees.

TCC appeals the superior court's decision as to the David Salmon Tribal Hall, the second floor of the Chief Peter John Tribal Building, the fourth floor of the Chief Peter John Tribal Building, and the second floor of the Al Ketzler, Sr., Building.[3] TCC also appeals the attorney's fees award.

## III. STANDARD OF REVIEW

When the superior court in its capacity as an intermediate appellate court reviews a decision of the borough assessor, we review the assessor's decision directly, not deferring to the superior court's decision.[4] Whether certain property merits a tax exemption under AS 29.45.030 is a question requiring statutory interpretation; thus, we apply the "substitution of judgment" standard of review, giving no deference to the assessor's administrative expertise.[5] We review questions of law de novo, adopting the rule of law "most persuasive in light of precedent, reason, and policy."[6]

In all contested cases, the assessor is required to "make findings of fact sufficient to explain the reasons" for its decision.[7] We review the assessor's factual findings for substantial evidence.[8] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9]

## IV. DISCUSSION

Alaska Statute 29.45.030, the most recent version of Alaska's charitable-purpose tax exemption statute,[10] provides in relevant part:

---

3. TCC's opening brief and points on appeal indicate that it is appealing the assessor's determination as to both the first and second floors of the Al Ketzler, Sr., Building, which were part of the same tax parcel. However, TCC's briefing concerns itself entirely with the lease by the Fairbanks Native Association (FNA) of the second floor of the Al Ketzler, Sr., Building. The first floor was occupied by the U.S. General Services Administration, and TCC refers to it only as a "market comparable" in its briefing. We have therefore reviewed the superior court's conclusion only with respect to FNA's lease of the second floor of the Al Ketzler, Sr., Building.

4. See Dená Nená Henash, 88 P.3d at 128 (citing among others CH Kelly Trust v. Municipality of Anchorage, Bd. of Equalization, 909 P.2d 1381, 1382 (Alaska 1996)).

5. See City of Nome v. Catholic Bishop of N. Alaska, 707 P.2d 870, 875–76 (Alaska 1985) (citations omitted).

6. See Dená Nená Henash, 88 P.3d at 128–29 (quoting Ketchikan Gateway Borough v. Ketchikan Indian Corp., 75 P.3d 1042, 1045 (Alaska 2003)) (internal quotation marks omitted).

7. Id. at 129 (citing City of Nome, 707 P.2d at 875).

8. Id. (citing Balough v. Fairbanks N. Star Borough, 995 P.2d 245, 254 (Alaska 2000)).

9. Keiner v. City of Anchorage, 378 P.2d 406, 411 (Alaska 1963) (citing Consol. Edison Co. of N.Y. v. N.L.R.B., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

10. The charitable-purpose tax exemption in current AS 29.45.030 was preceded by a similar exemption at former AS 29.10.336 (1962). This provision was amended in 1964. See ch. 34, § 2, SLA 1964. AS 29.10.336 was subsequently amended and renumbered as AS 29.53.020 in

(a) The following property is exempt from general taxation:

...

(3) property used exclusively for nonprofit religious, charitable, cemetery, hospital, or educational purposes;

....

(c) Property described in (a)(3) ... of this section from which income is derived is exempt only if that income is solely from use of the property by nonprofit religious, charitable, hospital, or educational groups. If used by nonprofit educational groups, the property is exempt only if used exclusively for classroom space.

We interpret the statute as follows: As a general matter, property must meet the exclusive use requirement of AS 29.45.030(a) to qualify for tax exemption—that is, it must be "used exclusively for nonprofit religious, charitable, cemetery, hospital, or educational purposes."[11] In the special case of income-deriving properties, these remain exempt if (1) the entities using a specific property are all nonprofit religious, charitable, hospital, or educational groups (with educational groups using the property exclusively for classroom space); and (2) the property meets the exclusive use requirement of AS 29.45.030(a), being used exclusively for nonprofit religious, charitable, cemetery, hospital, or educational purposes. There are no statutory restrictions on the amount of income such properties may earn.

TCC challenges the borough assessor's determination that the David Salmon Tribal Hall, the second floor of the Chief Peter John Tribal Building, the second floor of the Al Ketzler, Sr., Building, and the fourth floor of the Chief Peter John Tribal Building are ineligible for a tax exemption under AS 29.45.030. We take each in turn, using the above statutory analysis to frame our discussion.

1972, which in turn was amended and renumbered as AS 29.45.030 in 1985. *See* ch. 118, § 2, SLA 1972; ch. 74, § 12, SLA 1985. The 1985 amendment contained the last revision of the charitable-purpose exemption to date. This case

## A. The David Salmon Tribal Hall

■ The first parcel at issue is the David Salmon Tribal Hall (Tribal Hall). TCC describes the Tribal Hall as "an alcohol free Native community center" and "potlatch hall," which primarily serves as "a venue to hold potlatches for the Native community in Fairbanks." TCC policy restricts Tribal Hall use to the Native community, and no user fee is charged for funerals, memorials, and hardship fundraisers related to the Native community. Funerals, memorials, and hardship fundraisers have first priority in booking the Tribal Hall, and other events must vacate their reservations should a conflict arise. For these other events, TCC lists user fees between $125 and $875. Drugs, alcohol, and tobacco are not permitted in the facility.

The assessor found, and the parties do not contest, that the Tribal Hall was used 40 times in 2005. The assessor also found that these uses included a mix of "tribal related activities, potlatches, dances, funerals, church services, fund raisers, tribal governance meetings and other gatherings," and some of the groups using the hall paid a fee to do so. The record supports both findings.

The assessor concluded that the Tribal Hall was not eligible for a tax exemption, explaining that its limited use "was not exclusive to exempt purposes." The assessor did not specify these non-exempt uses. On appeal, the superior court acknowledged that the assessor did not specify which uses of the Tribal Hall were found to be non-exempt, but noted that the uses of the Tribal Hall included weddings, and in at least one case a fee of $575 was charged for a wedding reception. The superior court concluded that "the renting of a hall to private individuals for a wedding or wedding reception [is] not ... a charitable use," and therefore the Tribal Hall failed the requirement that it be used exclusively for charitable purposes. TCC appeals the superior court's ruling, arguing that the uses of the Tribal Hall are "clearly charitable" and merit a tax exemption.

is the first to address the proper interpretation of the exemption as most recently amended.

**11.** AS 29.45.030(a)(3).

We use the "substitution of judgment" standard to review the assessor's decision.[12] The central issue is whether the paid uses of the Tribal Hall violate the "exclusive use" requirement of AS 29.45.030(a). Our review of the record reveals only two questionable uses: two wedding receptions, for which the organizers paid $375 and $575, respectively.[13] Unlike the superior court, we conclude that these wedding receptions do not negate the charitable-purpose tax exemption. The receptions are firmly connected to the charitable purpose underlying TCC's administration of the Tribal Hall: promoting "an alcohol-free environment for Native social and cultural events," in the words of TCC's counsel at oral argument. We have said that "what is done out of good will and a desire to add to the improvement of the moral, mental, and physical welfare of the public generally comes within this meaning of the word 'charity.' "[14] TCC's use of the Tribal Hall for its constituency falls well within this definition.

In oral argument before us, the Borough argued that an alcohol-free reception can occur in other venues, in accordance with the wishes of the person holding the wedding. However, TCC persuasively responded that in other venues, alcohol is likely to be available from nearby bars that may even be in the same building, whereas alcohol is not permitted on any TCC property. At oral argument, TCC stated that security guards monitor the Tribal Hall to ensure that intoxicated individuals do not enter and that guests do not bring alcohol into the event. As the Tribal Hall uniquely provides an alcohol-free venue for TCC's constituency, we hold that constituent wedding receptions do not disqualify TCC's use of the Tribal Hall as a charitable use. Overall, the Tribal Hall meets the exclusive use requirement of the charitable-purpose tax exemption statute, and should have been deemed tax-exempt.

**B.    The Second Floor Of The Chief Peter John Tribal Building And The Second Floor Of The Al Ketzler, Sr., Building**

The next two properties at issue are the second floor of the Chief Peter John Tribal Building and the second floor of the Al Ketzler, Sr., Building. TCC has rented both properties to other nonprofit organizations. Suite 201 of the Chief Peter John Tribal Building is leased to the Adult Learning Program of Alaska (Learning Program), which TCC describes as "an educational group which leases its space for classroom space." Suite 200 of the Al Ketzler, Sr., Building is leased to the Fairbanks Native Association. The borough assessor deemed the properties rented by the Learning Program and Fairbanks Native Association to be taxable, as both were being leased at market rates. The superior court affirmed, largely for the same reason.

TCC argues on appeal that the assessor erred as to the law, and that the assessor's factual findings were not supported by substantial evidence. While the assessor and the superior court focused on the rental amounts, TCC argues that AS 29.45.030(c) exempts both properties because they are being leased by one statutorily-qualified nonprofit to another statutorily-qualified nonprofit for qualifying uses. TCC argues that the amount of income TCC derives from renting the property is immaterial. The Borough's position is that neither property should receive a tax exemption, because they are leased at market rates.

TCC's argument is persuasive. Leased properties derive income for the lessor, and are therefore subject to the restrictions of AS 29.45.030(c). However, AS 29.45.030 places no restrictions on the amount of income the charitable organization derives from renting the property. It is concerned only with the nature of the property's use.

**12.**  *City of Nome v. Catholic Bishop of N. Alaska,* 707 P.2d 870, 875–76 (Alaska 1985); *Fairbanks N. Star Borough v. Dená Nená Henash,* 88 P.3d 124, 128 (Alaska 2004).

**13.**  A third wedding reception was combined with a potlatch; users do not appear to have paid a fee.

**14.**  *Dená Nená Henash,* 88 P.3d at 132 (quoting *Matanuska–Susitna Borough v. King's Lake Camp,* 439 P.2d 441, 445 (Alaska 1968)).

Because TCC is a charitable nonprofit, the leased properties will be tax-exempt if the lessee is a nonprofit religious, charitable, hospital, or educational group that is using the property "exclusively for nonprofit religious, charitable, cemetery, hospital, or educational purposes."[15] If a lessee is an educational group, the exemption is qualified by the requirement that the lessee use the property "exclusively for classroom space."[16]

The assessor did not identify non-exempt uses in the case of either property; he concluded that the properties were taxable solely because TCC charged market-rate rents. This conclusion is based on a misinterpretation of the law. The Borough does not dispute that the Fairbanks Native Association and the Learning Program were renting the property for exempt uses; the Borough's argument relies on the erroneous assumption that TCC's rental rates are relevant. Because the properties in question were used "exclusively for [exempt] purposes," we interpret AS 29.45.030 to provide TCC a tax exemption in the case of both properties.

## C. The Fourth Floor Of The Chief Peter John Tribal Building

■ The final parcel at issue is the fourth floor of the Chief Peter John Tribal Building (Tribal Building). Under the borough code, the use of a parcel as of January 1 of the tax year is determinative of the tax exemption for that year.[17] Vacant property is not generally eligible for a property tax exemption.[18] In its preliminary disclosures, TCC stated that the fourth floor of the Tribal Building was vacant. However, in supplemental disclosures, TCC updated this to say that "[a]s of January 1, 2006, the 4th floor was occupied by the Fairbanks Community Mental Health Center" (Health Center). TCC simultaneously submitted documents showing that the Health Center was a nonprofit organization engaged in charitable activities. TCC asserts that its initial disclosure of a vacancy was made in error. No lease documents relating to the Health Center were included in the record.

At the June 2006 hearing, the assessor noted that there had been "some kind of migration between departments" and asked when that had taken place. TCC Chief Financial Officer Kal Kennedy responded that "[t]he big migration was that Fairbanks Community Mental Health, right after the first of the year, vacated into their own structure." The exchange continued:

Assessor: [A]s of January 1st of the year, [the Health Center] ran a holdover with their lease?

Kennedy: Correct.

Assessor: Okay.

Kennedy: They ... were in the process of moving, but it didn't happen until—you know, into January or February.

Assessor: So ... for purposes of this exemption application, it's—they were there [on January 1st].

Kennedy: Right.

The assessor nonetheless determined that the parcel was non-exempt, explaining that "[b]ased on TCC's [preliminary disclosures] it was declared that as of January 1, 2006 the unit was vacant and no charitable use was being made of this area." The superior court affirmed this decision, explaining that the evidence was contradictory and that TCC had the burden of proof of showing the parcel was not vacant.

TCC argues that the assessor's finding that the parcel was vacant on January 1, 2006, is not supported by substantial evidence and must be reversed. TCC asserts that the assessor's finding is "solely based upon [an] error in TCC's initial filings" and improperly ignores TCC's subsequent documentary and testimonial evidence correcting that error.

The Borough responds that the assessor's finding is supported by substantial evidence in light of TCC's preliminary disclosures and TCC's failure to provide financial documents or a lease agreement pertaining to the space.

---

**15.** AS 29.45.030(a)(3).

**16.** AS 29.45.030(c).

**17.** *See* Fairbanks General Code Ordinance (FGCO) §§ 3.08.020, .090 (2008).

**18.** FGCO § 3.08.020(C).

Alternatively, the Borough argues that even if we find that the parcel was occupied, the parcel is still non-exempt because "TCC failed to provide any evidence as to rental rates and income derived from the lease of the space in 2005."

We agree with TCC that the assessor's vacancy finding was not supported by substantial evidence. Even in the absence of a lease agreement or financial documents, TCC did submit documentary and testimonial evidence that the parcel was occupied on January 1, 2006, and that its preliminary disclosure regarding the vacancy was in error. The assessor relied solely on the initial disclosure and did not explain why he ignored the later corrections. Nor did the assessor identify any reason for doubting the credibility of these later corrections. We find that the vacancy conclusion is not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." [19]

With regard to the parcel's taxability, it is not seriously disputed that the Health Center, while it operated, was engaged in exclusively nonprofit hospital purposes. As explained above, AS 29.45.030 exempts properties that are rented from one qualifying nonprofit to another qualifying nonprofit, including nonprofit hospitals using the properties exclusively for nonprofit hospital purposes. Although the Borough argues that TCC has not produced evidence as to its rental rates and income from leasing the space to the clinic, these figures are immaterial to whether the use of the property is exempt. We conclude that the property should have qualified for a tax exemption, and accordingly reverse the superior court's decision.

### D. Attorney's Fees

Finally, TCC argues that the superior court abused its discretion in awarding the Borough $38,416 in attorney's fees. As we are reversing the superior court's determination as to all four parcels, we must vacate the attorney's fees award [20] and remand for the superior court to award fees in light of this opinion.

## V. CONCLUSION

Because the David Salmon Tribal Hall was being used exclusively for charitable purposes, we hold that it was tax-exempt and REVERSE the superior court's determination to the contrary. Because the remaining three parcels were rented to other charitable non-profits for exempt purposes, we hold that they were tax-exempt and REVERSE the superior court's decision as to these parcels. In light of these conclusions, we VACATE the attorney's fees award and REMAND for a determination on attorney's fees consistent with this opinion.

---

**19.** *Keiner v. City of Anchorage,* 378 P.2d 406, 411 (Alaska 1963) (citations omitted).

**20.** *Kenai Peninsula Borough v. Cook Inlet Region, Inc.,* 807 P.2d 487, 501–02 (Alaska 1991).