*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| FAIRBANKS GOLD MINING, INC., ) | |
| ) | Supreme Court No. S-17735 |
| Appellant, ) | |
| ) | Superior Court No. 4FA-18-02179 CI |
| v. ) | |
| ) | O P I N I O N |
| FAIRBANKS NORTH STAR ) | |
| BOROUGH ASSESSOR, ) | No. 7538 – June 18, 2021 |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Michael A. MacDonald, Judge.

Appearances: Jonathan E. Iversen and Willa B. Perlmutter, Stoel Rives LLP, Anchorage, for Appellant. Wendy M. Dau and Ehren D. Lohse, Assistant Borough Attorneys, and Jill S. Dolan, Borough Attorney, Fairbanks, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

BOLGER, Chief Justice.

## I. INTRODUCTION

A mining company appealed the borough assessor's valuation of its mine to the borough board of equalization. At a hearing the company presented a detailed report arguing the borough had improperly included the value of "capitalized waste stripping" when calculating the tax-assessed value of the mine. The assessor maintained

its position that waste stripping was taxable, but reduced its valuation of the mine to better reflect the remaining life of the mine. The board approved the assessor's reduced valuation of the mine and the superior court affirmed the board's decision.

Alaska Statute 29.45.030(a)(9) prohibits local governments from taxing "natural resources in place," a definition which specifically includes "ore bodies." The mine owners argue that waste stripping — the process of removing worthless rock that sits on top of valuable ore — falls within this statutory exemption from taxation. But we construe municipal taxing power broadly and read exceptions to that power narrowly. Waste stripping is not a "natural resource," but an improvement that makes it easier for miners to access natural resources. We conclude that the value of this improvement, like that of other improvements at the mine site, is subject to tax by the borough. We therefore affirm the superior court's decision affirming the board's valuation.

## II.     FACTS AND PROCEEDINGS

### A.     Borough Assessment

In January 2018 the Fairbanks North Star Borough assessor valued the Fort Knox Mine — owned by Fairbanks Gold Mining, Inc. — at $673.1 million and assessed property taxes accordingly.[1] Of that value, $17.8 million derived from the land, and the remaining $655.3 million derived from improvements.

The assessor values mine improvements using the cost approach. Each year Fairbanks Gold provides a list of capital improvements completed at the mine. The assessor adds the cost of those improvements — except for "non-affixed personal property items" — to the value of the mine. For previous years, the assessor depreciates the value of capital expenses by 5% annually over a 20-year period with a floor of 30%

---

[1]     *See* AS 29.45.110(a) (requiring assessment based on value as of January 1 of assessment year).

of the initial value. The assessor describes the mine site as a "special use property" for which "cost information" is readily available and useful for calculating the property value "when there are no other measurable means of doing so."

The most valuable single improvement assessed at the mine site is "capitalized waste stripping." Waste stripping is the process of removing "economically barren surface materials" — known as "overburden" or "waste rock" — from the mine site to improve access to valuable ore. Fort Knox has been mined in phases, with waste stripping occurring in each phase. Phases one through seven are fully depleted, and mining has proceeded to phase eight.

The assessor valued each phase of waste stripping in the same manner as other mine improvements — by depreciating each year's stripping expense by 5% annually over 20 years with a 30% floor. This process recognizes that earlier waste stripping still carries value, but not as much value as more recent waste stripping. After adjusting for depreciation, the assessor calculated the total value of the mine's waste stripping in 2018 at $295.4 million and assessed taxes accordingly.

## B. Appeal To The Board Of Equalization

Fairbanks Gold appealed the assessor's initial valuation to the Fairbanks North Star Borough Board of Equalization. Fairbanks Gold did not contest the value of the land, but asserted that the value of taxable improvements was under $359 million, nearly $300 million less than the assessed value. Fairbanks Gold argued the "[a]ssessor erred by including the costs of capitalized waste stripping." It claimed that even if inclusion of such costs were correct, "the assessor improperly calculated depreciation/obsolescence," which led to an inflated valuation.

### 1. Fairbanks Gold's appraisal report and the assessor's report to the board

In support of its position, Fairbanks Gold commissioned an appraisal report.

The report did not actually value waste stripping, but instead argued that the value of waste stripping cannot be taxed. The appraiser posited that any value added by waste stripping must accrue to the ore body, which cannot be taxed under Alaska law.[2]

The appraiser also argued that the value of waste stripping should decrease based on depletion of the ore reserve rather than depreciation over time because "changes in topography" — unlike buildings and equipment — do not deteriorate. Because the economic life of the mine cannot be longer than the life of the ore deposit, the appraiser claimed that a uniform depreciation schedule of 20 years was inappropriate and that the assessor should have tied the depreciation in value to the remaining life of the mine based on the amount of ore remaining.

The assessor defended his valuation of the mine in a written report. He compared capitalized waste stripping "to the excavation done in preparation for a house or large commercial building." Just as excavation adds value to a commercial or residential property by making it easier to build on, waste stripping adds value to a mining property by making it easier to mine. The assessor also likened waste stripping to building a road that "provides necessary access to the mine site." And he compared Fairbanks Gold's argument that the value of waste stripping accrues to the "minerals in place" to "claiming that a water well . . . adds value to the water, and not the property itself."

The assessor also pointed to accounting standards indicating that waste stripping should be treated as an asset that provides value for future mine phases.[3] He

---

[2] *See* AS 29.45.030(a)(9) (exempting "natural resources in place including . . . ore bodies" from "general taxation").

[3] *See, e.g.,* WESTERLUND & LARSON, FIN. ACCOUNTING STANDARDS BD., EMERGING ISSUES TASK FORCE, ISSUE NO. 04-6, WORKING GRP. REPORT NO. 1,

(continued...)

noted that Fairbanks Gold itself capitalizes and depreciates waste stripping for accounting purposes. Although the Fairbanks Gold appraiser argued that this capitalization of waste stripping "to comply with IRS requirements . . . does not correlate directly with full and true value," the assessor observed that the company had not previously objected to the valuation and taxation of waste stripping.

### 2. Board of Equalization hearing

The board held a hearing on Fairbanks Gold's appeal in May 2018. The board granted the parties 90 minutes each to present their arguments, with a 30-minute rebuttal for Fairbanks Gold. Fairbanks Gold was represented by its attorney and its general manager.

Fairbanks Gold's contract appraiser testified at the hearing. He first opined that the cost approach was inappropriate because it would result in a lower valuation for an unmined deposit with overburden than a mined-out prospect with no overburden — a result contrary to common sense. But under questioning from the board, the appraiser admitted that between two mines with identical ore bodies, one where overburden had been removed and one where it had not, the mine without overburden would be worth more, and he admitted that waste stripping was an asset to the mine as a business.

The appraiser then proposed for the mine an alternative value which he had not discussed in his report. He argued that if the cost method must be used, depreciation should be calculated by dividing the number of ounces of gold already produced by the number of total ounces in the deposit. The appraiser calculated a 68.4% depreciation in

---

[3] (...continued)
SUPPLEMENT NO. 2, ACCOUNTING FOR STRIPPING COSTS IN THE MINING INDUSTRY (2005), https://www.fasb.org/jsp/FASB/Document_C/DocumentPage& cid=1218220163091 (laying out best accounting practices for value of waste stripping as capital asset).

the mine's value with this method. Applying this formula to the $1 billion total cost for the mine, including waste stripping, he proposed a "full and true value" of $315.7 million. But he again argued that waste stripping expenses should be excluded, leaving $510 million in taxable property and reducing the mine's value after depreciation to $161 million.

The borough assessor disagreed with the appraiser's methodology, but he also proposed a new and lower valuation of the mine. The assessor updated his depreciation schedule "from 20 years down to 10 years," to be more "reflective of the remaining economic life of the open pit where the waste stripping . . . is occurring." The assessor also reduced the "net floor" in his depreciation model from 30% to 10% to better reflect the diminished value of older waste stripping. These changes resulted in a revised value of $549.5 million — a $123.6 million reduction in the assessed value of waste stripping.

The assessor explained that he had made these changes to his model following a conversation with Fairbanks Gold's general manager. He said the choice of 10 years was a "tough call," and that the number was based in part on the fact that the company had either purchased or had access to an adjoining tract of land, thus extending the mine's economic life. The assessor admitted that without the new tract "they're probably getting close to . . . being mined out in the pit." But he said the mine had gained access to the additional acreage in November 2017 and had already drilled to ascertain the presence of gold.

The general manager responded that the economic life of the mine was not 10 years but 3 years and denied giving the assessor information "to base a 10 percent net floor on." But Fairbanks Gold did report the value of the reserves in the adjoining tract to the Securities and Exchange Commission. And the manager said that once the mine

had "defined" the new tract at the end of 2017, it "had to take ownership of what could be in that ground."

### 3.    The board's decision

At the close of testimony, the board chair observed that "everyone agrees waste stripping has value."  He compared waste stripping to "building a railroad across something . . . .  You don't want the railroad, but you have to get to the other side. . . . [I]t's an improvement, and you have to put value on it."  He disagreed that the value of waste stripping accrued to the gold deposit.  That gold, said the chair, had an independent market value which did not increase as a result of the waste stripping done to access it. The chair concluded that waste stripping was an asset to the property that the assessor had been properly assessing "for many years."

The board unanimously accepted the assessor's amended valuation, determining that he had acted within his "broad discretion" in valuing the property.  It concluded that the cost approach was a "reasonable and acceptable tax appraisal valuation methodology," that Fairbanks Gold had "ample opportunity" to present its case, and that the company had not carried its burden to prove that the assessor's valuation was improper.  As the board explained:  "The Assessor's tax assessment is presumed valid and will not be overturned on appeal unless the Appellant can show fraud, the clear adoption of a fundamentally wrong principle of valuation or that the assessment is improper, unequal[,] or excessive."  The board concluded Fairbanks Gold had "not overcome the presumption of validity . . . nor ha[d] it proved by a preponderance of the evidence that the Assessor's tax valuation . . . was unequal, excessive, or improper."

### C.    Appeal To The Superior Court

Fairbanks Gold appealed to the superior court and moved for a trial de novo.  The superior court denied the motion, explaining that the superior court

generally reviews agency decisions on the record and will conduct a full trial only where "the agency record is not sufficient to determine the issue on appeal, or if the record discloses that justice requires evidence to be taken de novo."[4]

In its opening brief Fairbanks Gold reiterated its points from the board hearing. But in the reply brief it additionally argued that the assessor had no evidentiary basis for the amended ten-year depreciation schedule and that the board's decision to accept the amended valuation was therefore not supported by "substantial evidence." Specifically, Fairbanks Gold challenged the assessor's reliance on the mine's acquisition of the adjacent tract, which it claimed the assessor learned of only after completing his assessment and therefore could not have relied upon. Fairbanks Gold claimed not to have acquired that tract until after January 1, 2018. Therefore, it argued, the new tract should not have been considered when calculating the life of the existing mine.

The superior court did not consider Fairbanks Gold's challenge to the sufficiency of the evidence supporting the board's decision. This issue, the court said, was not raised in the points on appeal and only cursorily raised in Fairbanks Gold's opening brief.[5] The superior court otherwise affirmed the board in full.

Fairbanks Gold appeals.

## III.   STANDARD OF REVIEW

When "the superior court acts as an intermediate court of appeal in an administrative matter, we independently review and directly scrutinize the merits of the

---

[4]     *Keiner v. City of Anchorage*, 378 P.2d 406, 410 (Alaska 1963).

[5]     *See In re Dissolution of Marriage of Alaback*, 997 P.2d 1181, 1184 n.3 (Alaska 2000) ("Points given only a cursory treatment in the argument portion of a brief will not be considered on appeal, even if developed in the reply brief.").

board's decision."[6]  "Questions of law and fact involving agency expertise are reviewed under the reasonable basis standard."[7]  When a party contests the factual basis for an assessor's valuation, we "review the assessor's factual findings for substantial evidence," and we require "findings of fact sufficient to explain the reasons" for the decision.[8]

Generally, "[t]axing authorities are to be accorded broad discretion" in their property valuation approach, and this discretion is questioned only in cases of "fraud or the clear adoption of a fundamentally wrong principle of valuation."[9]  But "[w]hether certain property merits a tax exemption under AS 29.45.030 is a question requiring statutory interpretation; thus, we apply the 'substitution of judgment' standard of review, giving no deference to the assessor's administrative expertise."[10]

## IV.  DISCUSSION

Fairbanks Gold first asserts that waste stripping is exempt from taxation under an Alaska statute preventing local governments from taxing "[n]atural resources in place."[11] But we narrowly construe this exemption and conclude that it does not apply to waste stripping. Fairbanks Gold also argues that the Board's valuation of the mine

---

[6]     *Horan v. Kenai Peninsula Borough Bd. of Equalization*, 247 P.3d 990, 997 (Alaska 2011) (quoting *Alford v. State, Dep't of Admin., Div. of Ret. & Benefits*, 195 P.3d 118, 122 (Alaska 2008)).

[7]     *Id.*

[8]     *Henash v. Fairbanks N. Star Borough*, 265 P.3d 302, 304 (Alaska 2011).

[9]     *Kelley v. Municipality of Anchorage, Bd. of Equalization*, 442 P.3d 725, 728-29 (Alaska 2019) (alteration in original) (first quoting *Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1262 (Alaska 1993); then quoting *Twentieth Century Inv. Co. v. City of Juneau*, 359 P.2d 783, 788 (Alaska 1961)).

[10]    *Henash*, 265 P.3d at 304.

[11]    AS 29.45.030(a)(9).

was insufficiently supported by the evidence presented at the hearing. But Fairbanks Gold waived this argument by raising it too late. Finally, Fairbanks Gold argues it should have been granted a trial de novo in superior court. But appeals from the Board are decided on the record established at the board hearing, and the circumstances here do not warrant a departure from that statutory procedure. We affirm both the valuation of the mine and the court's denial of Fairbanks Gold's motion for a trial de novo.

## A. The Valuation Of Fort Knox Mine Was Not Unequal, Excessive, Or Improper.

When seeking adjustment of an assessment, "[t]he appellant bears the burden of proof. The only grounds for adjustment of assessment are proof of unequal, excessive, improper, or under valuation based on facts that are stated in a valid written appeal or proven at the appeal hearing."[12]

### 1. Alaska Statute 29.45.030(a)(9) does not exempt waste stripping from local taxation.

The core question is whether AS 29.45.030(a)(9) exempts waste stripping from taxation. In relevant part, that statute provides tax exemption to "natural resources in place including coal, ore bodies, mineral deposits, and other proven and unproven deposits of valuable materials laid down by natural processes."[13] We review this question of statutory interpretation using our independent judgment and determine that waste stripping is not exempt from taxation.[14]

Fairbanks Gold argues that any value added by waste stripping is untaxable because that value accrues to the tax-exempt ore body. The process of waste stripping,

---

[12] AS 29.45.210(b).

[13] AS 29.45.030(a)(9).

[14] *See Henash*, 265 P.3d at 304-06 (reviewing scope of statutory tax exemption under substitution of judgment standard).

it contends, is simply a part of mining, "and the only reason whatsoever that you would ever incur the expense of removing the overburden is to enable you to mine the ore." But every expense incurred to improve the mine site is presumably to enable Fairbanks Gold to mine the ore, and the statute does not suggest that all of the mine's physical assets are thus exempt from taxation.

Alternatively, Fairbanks Gold argues that waste rock itself is a natural resource exempt from taxation under the statute. Fairbanks Gold cites legislative history indicating that "natural resources in place" was intended to be read broadly.[15] It argues the overburden should be included in the exemption because the "ore body" by definition "may include low-grade ore and waste as well [as] pay ore."

We examine the language of this exemption in the context of the entire statutory definition. "Pursuant to the doctrine of *ejusdem generis*, a general term, when followed by specific terms, will be interpreted in light of the characteristics of the specific terms, absent clear indication to the contrary."[16] Likewise, "[w]hen particular words are followed by general terms, the latter will be regarded as referring to things of a like class with those particularly described."[17]

---

[15]     *See* Minutes, Sen. Cmty. & Reg'l Affairs Comm. Hearing on S.B. 330, 17th Leg., 2d Sess., No. 135 (Jan 21, 1992) (testimony of Sandra Wicks, Legis. Liason, Dep't. of Cmty. & Reg'l Affairs) ("[N]atural resources in place was defined very broadly"); Minutes, Sen. Res. Comm. Hearing on S.B. 330, 17th Leg., 2d Sess., No. 242 (Jan 22, 1992) (testimony of Sandra Wicks, Legis. Liason, Dep't. of Cmty. & Reg'l Affairs) (same).

[16]     *City of Kenai v. Friends of the Recreation Ctr., Inc.*, 129 P.3d 452, 459 (Alaska 2006) (quoting *West v. Umialik Ins. Co.*, 8 P.3d 1135, 1141 (Alaska 2000)).

[17]     *State v. First Nat'l Bank of Anchorage*, 660 P.2d 406, 413 (Alaska 1982) (quoting *Chugach Elec. Ass'n v. Calais Co.*, 410 P.2d 508, 509-10 (Alaska 1966)).

Therefore, in AS 29.45.030(a)(9) the term "natural resources in place" must be interpreted in light of the examples that follow: "coal, ore bodies, mineral deposits, and other proven and unproven deposits of valuable materials laid down by natural processes." And the phrase "deposits of valuable materials" defines the scope of the terms. Thus the "ore bodies" and "mineral deposits" exempted from taxation are limited to "deposits of valuable materials."

The key word in this phrase is "valuable." Fairbanks Gold has, at numerous times over the course of this litigation, insisted the overburden is valueless. Yet it now seeks to lump the overburden in with a list of things whose common characteristic is economic value. This argument fails: neither the overburden itself, nor the process of removing it, can be reasonably classified as a "deposit of valuable materials."[18]

We will consider legislative history, but "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[19] And the legislative history does not convince us that the original purpose of the tax exemption was to create an expansive exception for operating mines. Instead, that history shows an intent to prevent the taxing of mines "before they are deriving revenue."[20] Neither a plain reading of the statute, nor an analysis of the statute's

---

[18] AS 29.45.030(a)(9)

[19] *State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins. v. Alyeska Pipeline Serv. Co.*, 262 P.3d 593, 597 (Alaska 2011) (quoting *Gov't Emp. Ins. Co. v. Graham–Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

[20] Minutes, Sen. Cmty. & Reg'l Affairs Comm. Hearing on S.B. 330, 17th Leg., 2d Sess., No. 220 (Jan 21, 1992) (testimony of Sandra Wicks, Legis. Liason, Dep't. of Cmty. & Reg'l Affairs).

legislative history, supports the conclusion that "economically barren" overburden is exempt from taxation.

Moreover, it is not the overburden itself that the assessor purports to tax, but the improvement to the property resulting from the removal of overburden. Just as the assessor can tax buildings, roads, and physical plants that facilitate mining on the property, it can tax waste stripping, which similarly facilitates mining on the property.

We construe tax exemptions narrowly.[21] And although this canon of strict construction "is an aid to, not a substitute for[,] statutory interpretation,"[22] the statute here is most reasonably interpreted as allowing the taxation of waste stripping. We conclude that the value of waste stripping at Fort Knox Mine is not exempt from taxation.

### 2. The taxing authority's choice of methodology was within its discretion.

Fairbanks Gold also argues that the assessor's methodology was improper because it would result in the highest assessed value when a mine is closest to depletion. Fairbanks Gold posits that a hypothetical buyer would pay more for a mine with all its ore still in place. But this argument misconceives the issue.

An assessor must assess property at its "full and true value," which is defined as "the estimated price that the property would bring in an open market and under the then prevailing market conditions."[23] In the case of a mine, the assessor's task

---

[21]    *Fairbanks N. Star Borough v. Deńa Neńa Henash*, 88 P.3d 124, 129 (Alaska 2004).

[22]    *See Sisters of Providence in Wash., Inc. v. Municipality of Anchorage*, 672 P.2d 446, 447 (Alaska 1983) (quoting *McKee v. Evans*, 490 P.2d 1226, 1230 n.18 (Alaska 1971)).

[23]    AS 29.45.110(a).

is complicated by the tax-exempt status of the ore itself.[24] To reach the taxable value of mine assets, the assessor must separate the value of the mine infrastructure from the value of the tax-exempt ore.

The assessor has broad discretion to decide how to complete this task.[25] We will only upset the assessor's choice of method in cases of "fraud or the clear adoption of a fundamentally wrong principle of valuation."[26] Accordingly, we review the Board's approval of the assessor's valuation method under the deferential "reasonable basis standard."[27]

If the assessor is faced with the challenge of valuing a mine without valuing the ore, the cost approach is not clearly wrong. Indeed, "we have long recognized the cost approach as a usual appraisal method for improved property."[28] "The relevant inquiry is whether or not a valuation method selected by the assessor provides some reasonable estimate of the market value of the interest to be taxed, not whether the

---

[24]    AS 29.45.030(a)(9).

[25]    *N. Star Alaska Hous. Corp. v. Fairbanks N. Star Borough Bd. of Equalization*, 778 P.2d 1140, 1143-44 (Alaska 1989) ("Taxing authorities are to be accorded broad discretion in deciding among recognized valuation methods.").

[26]    *Id.* at 1144 (quoting *Twentieth Century Inv. Co. v. City of Juneau*, 359 P.2d 783, 788 (Alaska 1961) (emphasis omitted)).

[27]    *Fairbanks N. Star Borough Assessor's Office v. Golden Heart Utils., Inc.*, 13 P.3d 263, 266-69 (Alaska 2000). Fairbanks Gold argues that this methodological decision should receive no deference, but we have repeatedly recognized that the assessor has broad discretion in choosing a valuation method and is due deferential review of the choice. *See, e.g.*, *Horan v. Kenai Peninsula Borough Bd. of Equalization*, 247 P.3d 990, 998 (Alaska 2011); *N. Star Alaska Hous. Corp.*, 778 P.2d at 1144 n.7; *Hoblit v. Greater Anchorage Area Borough*, 473 P.2d 630, 632 (Alaska 1970).

[28]    *Horan*, 247 P.3d at 998 (citing *Dash v. State*, 491 P.2d 1069, 1071 (Alaska 1971)).

appraisal method has received the imprimatur of acceptance from the appraisal community."[29] Although Fairbanks Gold's hired appraiser disagreed with the assessor's valuation method, it was not fundamentally wrong, and the board had a reasonable basis to approve the valuation.

### 3. Fairbanks Gold waived its argument that the assessor's depreciation schedule was improper.

Fairbanks Gold next argues that the assessor's valuation was inadequately supported by the facts presented at the Board of Equalization hearing. The assessor's estimate that the mine had ten productive years left was partially based on Fairbanks Gold's prospect of expanding the mine to access the ore under an adjoining tract of land. The assessor referenced the mine's potential for expansion in his testimony, and the mine manager admitted that the mine had already reported the existence of gold reserves under that adjoining tract to the SEC. But Fairbanks Gold claims it did not acquire its interest in that property until after January 1, 2018. As this dispute concerns the mine's value on January 1,[30] Fairbanks Gold argues that reliance on the later acquisition is improper and that absent this information the ten-year mine life proposed by the assessor and adopted by the board was arbitrary and unsupported by substantial evidence.

But Fairbanks Gold did not raise this issue in its opening brief to the superior court. Instead, it first raised the argument in its reply brief to that court. While Fairbanks Gold's opening brief alluded to evidentiary insufficiency in its argument for a trial de novo, it never squarely asked the superior court to reverse on those grounds. And as we have explained, "[i]ssues that are 'inadequately briefed or raised for the first

---

[29]    *Golden Heart Utils.*, 13 P.3d at 268 (footnote omitted).

[30]    *See* AS 29.45.110(a) (requiring assessment of property "at its full and true value as of January 1 of the assessment year").

-15-                                                                                    **7538**

time in a reply brief' on an administrative appeal to the superior court are considered waived."[31]  Accordingly, Fairbanks Gold has waived this argument.

## B.    Fairbanks Gold Is Not Entitled To A Trial De Novo.

Fairbanks Gold argues that it was entitled to a trial de novo in the superior court because it was unfairly prejudiced by the assessor's reduction of the mine's assessed value at the board hearing.  It claims it was denied "the opportunity to present evidence challenging the assessor's finding" on depreciation calculations.  The assessor responds that Fairbanks Gold suffered no prejudice because he explained the reasons for his revaluation at the hearing and Fairbanks Gold had the opportunity to challenge his findings.

Fairbanks Gold argues that the superior court had the discretion to order a trial de novo under AS 22.10.020(d).[32]  When a court has discretion to order a trial de novo, we review the denial of such a motion for abuse of that discretion.[33]  But when the availability of a trial de novo is specifically limited by statute, we interpret that statutory limitation using our independent judgment.[34]

Alaska Statute 29.45.210(d) provides that appeals to the superior court from the board of equalization "are heard on the record established at the hearing before the

---

[31]    *West v. Alaska Mental Health Tr. Auth.*, 467 P.3d 1064, 1071 (Alaska 2020) (quoting *Alyeska Pipeline Serv. Co. v. State*, 288 P.3d 736, 743 (Alaska 2012)).

[32]    AS 22.10.020(d) provides:  "The hearings on appeal from a final order or judgment of a subordinate court or administrative agency . . . shall be on the record unless the superior court, in its discretion, grants a trial de novo, in whole or in part."

[33]    *Pacifica Marine, Inc. v. Solomon Gold, Inc.*, 356 P.3d 780, 788 (Alaska 2015).

[34]    *See Allen v. Alaska Oil & Gas Conservation Comm'n*, 147 P.3d 664, 667-670 (Alaska 2006) (reviewing de novo the question of which statute governed the availability of a trial de novo in an administrative appeal to the superior court).

board." We have previously recognized that in enacting this section "[t]he legislature . . . expressly chose to limit the scope of review of the board's determinations."[35] This specific provision in the property tax statute controls over the more general provision in AS 22.10.020(d).[36]

In *Alvarez v. Ketchikan Gateway Borough* we considered a taxpayer's request to supplement the record in a property tax appeal.[37] We explained that AS 29.45.210(d) limited the scope of our review to the record established at the board hearing.[38] We noted that the record on appeal included all files submitted at the hearing, and we therefore concluded that the record was complete.[39] In this case we likewise conclude that the superior court's decision to review Fairbanks Gold's appeal on the record from the board hearing was consistent with AS 29.45.210(d).

Even when the applicable statute does not provide a right to a trial de novo, however, "a similar right to trial de novo is created if an administrative adjudicative procedure does not afford due process."[40] We have recognized a denial of due process when a party has been "denied the opportunity to present . . . relevant and material

---

[35] *Cool Homes, Inc. v. Fairbanks N. Star Borough*, 860 P.2d 1248, 1267 (Alaska 1993).

[36] *See Allen*, 147 P.3d at 668 ("In general, if two statutes conflict, then . . . the specific controls over the general.").

[37] 28 P.3d 935, 938 (Alaska 2001).

[38] *Id*. at 939.

[39] *Id*. at 939-40.

[40] *State v. Lundgren Pac. Constr. Co.*, 603 P.2d 889, 895 (Alaska 1979).

evidence supporting his claim."[41] But we also require that "[a] violation of due process should be alleged with particularity and a showing of prejudice."[42] And we conclude that Fairbanks Gold has failed to show a prejudicial violation of its due process rights.

During the board hearing the assessor explained the reasoning behind his decision to reduce the assessed value. He testified that he had reduced the depreciation period for the waste stripping to reflect a "more realistic" estimate of the remaining life of the mine based on a conversation with the Fairbanks Gold general manager. The assessor also explained that he had reduced the floor value of the waste stripping beyond the salvage value for other improvements because the expenditures for waste stripping in the early phases of the mine did not contribute as much to the value of the mine.

These concessions did not prejudice Fairbanks Gold; to the contrary, these concessions reduced the mine's assessed value and the company's tax burden. And the reduction in value was a foreseeable response to Fairbanks Gold's previous arguments about the mine's economic life and the value of waste stripping. The revaluation was not a surprise, nor was Fairbanks Gold denied the opportunity to respond to it.

The board had before it the assessor's report, Fairbanks Gold's detailed appraisal report, and hours of testimony from both sides. And Fairbanks Gold, though represented by counsel, did not object to the assessor's reduced valuation. We conclude that Fairbanks Gold has not established that it was denied the opportunity to present any material evidence or otherwise deprived of its right to a fair hearing. The superior court did not err by denying its motion for a trial de novo.

---

[41]     *Nash v. Matanuska-Susitna Borough*, 239 P.3d 692, 699 (Alaska 2010) (quoting *Keiner v. City of Anchorage*, 378 P.2d 406, 409 (Alaska 1963)).

[42]     *Id.*

## V. CONCLUSION

The superior court's decision is AFFIRMED.